447 P.2d 233

**STATE of Arizona, Appellee,**
v.
**Andrew OWENS, Appellant.**
**No. 1800.**

Supreme Court of Arizona.
In Banc.
Nov. 20, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Richards & Heilman, by Harlan Heilman, Yuma, for appellant.

STRUCKMEYER, Justice.

Andrew Owens and Walter Graves were jointly informed against and tried for robbery in the Superior Court of Yuma County. Trial was held on Wednesday, February 1st, 1967, each defendant being represented by his own counsel. The trial court ordered a directed verdict of acquittal in favor of the defendant, Graves, and the State then called Graves to the witness stand. He was cross-examined at that time by counsel for Owens. The jury was unable to arrive at a verdict and the court declared a mistrial, discharging the jury. Graves was released from custody on Wednesday evening, February 1st, 1967, and on Friday, February 3rd, 1967, the case was set for retrial on Wednesday, February 8th, 1967.

A subpoena was issued for Graves on Friday, February 3rd, 1967, after the case was set for retrial, but Graves who was an itinerant negro laborer could not be found in the area in which he formerly frequented and could not be subpoenaed to testify in person. Pursuant to Rule 256 of 17 A.R.S., Rules of Criminal Procedure, a certified transcript of Graves' testimony at the trial of the previous Wednesday was read to the jury over Owens' objection. From the judgment of guilty he brings this appeal.

It is first urged that it was error for the trial court to permit a reading into evidence of the transcript of the first trial of the testimony of the absent witness, Graves. Rule 256, 17 A.R.S., Rules of Criminal Procedure provides that the testimony of a witness may be read in evidence if the witness is beyond the jurisdiction of the court. It reads:

"Rule 256. Use of transcript of testimony of dead or absent witness

"When in any court of record the testimony of any witness in a criminal action is reported by an official court reporter and certified by him to be correct,

and thereafter the witness dies or is beyond the jurisdiction of the court in which the action or proceeding is pending and his absence is not procured by the party offering the evidence, either party to the record may read in evidence the testimony of the witness in any subsequent trial or proceeding had in the same action or proceeding subject only to the same objections that might be made if the witness were testifying in open court."

■ The jurisdiction of the Superior Court of Yuma County is, of course, the State of Arizona, and the processes of the Superior Court of the State of Arizona run throughout the entire State of Arizona, Sam v. State, 33 Ariz. 383, 265 P. 609. This court recently said:

"A return of the sheriff showing inability to serve a subpoena on the witness is a preliminary showing of absence, but it is not conclusive on the subject. Either party may supplement or contradict the showing. Sam v. State, supra. The ultimate test as announced in the Sam case, is whether the court is satisfied the witness is beyond its jurisdiction." State v. Head, 91 Ariz. 246, 371 P.2d 599.

■ It is apparent that this state is committed to the rule that the determination of whether a witness is beyond the jurisdiction of the court so that his personal attendance cannot be had is a matter within the sound discretion of the trial court. In this as in other discretionary matters we will not reverse the judgment of the trial court unless it appears that there is a palpable abuse of discretion.

In considering the extent to which attempts must be made to locate an absent witness we note the observations of the Criminal Court of Appeals of Oklahoma in Carson v. State, 54 Okl.Crim. 104, 16 P.2d 265, wherein the court said:

"In view of the fact that this witness was unemployed and had no fixed abode, the same effort or attempt to locate would not be required as in the case of a witness who had a fixed place of residence and might reasonably be expected to be found."

■ In State v. Head, supra, subpoenas were sent to the sheriffs of every county, but we do not think this is necessarily required to establish that a diligent effort has been made to locate an absent witness. Where there is evidence tending to show that the witness has departed from the state, the trial court is justified in holding that the prosecution is not required to show that subpoenas requiring the attendance of the witness had been issued and sent to the sheriffs of every county within the state. People v. Noone, 132 Cal.App. 89, 22 P.2d 284.

In the instant case a subpoena was issued on Friday, February 3rd, 1967, the day that the case was set for retrial. It was given to a detective sergeant of the Yuma Police Department who on the same day went to what is described as the "Beauvais Flat" area, apparently the negro section of Yuma. There he inquired concerning Graves and was unable to find him. He was told that Graves had said to a person called "Foots" that he, Graves, was going to Indio, California, to look for work and also he thought that Graves had some relatives in Tucson or "in some place down in that area of Arizona." Thursday afternoon was the last time that Detective Sergeant Carl Cansler could place Graves as being in the "Beauvais Flat" area.

The subpoena was thereafter turned over to Deputy Sheriff William L. Barcus, who on Monday went back to the negro area and questioned a number of people "and they stated that they did not know where he was, that he left town to their knowledge." Counsel for defendant stipulated as to the subpoena that "if a return was made it would show that it hadn't been served."

■ While the evidence that the witness Graves was beyond the jurisdiction of the court is slight, we think it is sufficient to sustain the discretion of the trial judge. As pointed out, Graves is seemingly an itinerant negro laborer with no fixed abode.

The trial court could conclude on the evidence that it is improbable such a person would stay in Yuma for very long after his release from jail, particularly since he had testified at the first trial against Owens, his supposed accomplice. The search for Graves, while it did not extend to other communities in Arizona, did disclose that Graves probably went to the State of California, a not unlikely possibility, since the City of Yuma borders on California. It was the trial judge's obligation to evaluate the significance of the testimony given.

While there was evidence of a somewhat more detailed search in People v. Thomas, 164 Cal.App.2d 571, 331 P.2d 82, the statements and the citation of authority there are definitive of the problem here:

> " * * * Testimony relating statements made by third parties, in response to inquiries concerning the whereabouts of an absent witness, are admissible to show what effort has been made to locate the witness; what inquiries have been made; what replies have been received in response to such inquiries; and what further investigation has been conducted as a result of such replies. * * * The propriety of this type of testimony, to establish the exercise of due diligence, has been approved by affirmance of the trial courts' decisions based thereon in [Citation of authorities]."

Owens relies on this court's decision in McCreight v. State, 45 Ariz. 269, 42 P.2d 1102. There, in reversing for failure to establish a sufficient basis for the admission of a transcript of a witness' testimony given at a former trial, we pointed out:

> " * * * It does not appear from the record whether any subpoena was ever issued for Killeen, or what, if any, effort was made by the officers to secure his attendance at the instant trial. So far as we can discover, the only showing made to sustain the admission of the transcript was the testimony of the missing witness' sister-in-law, Mary Gold, who stated that she knew that at the

time of the trial he was in El Paso, Tex. * * * "

It appears that even assuming the absent witness was in El Paso, Texas, still there was no showing that an effort had been made to produce his attendance from El Paso.

■ The defendant urges that the court erred in failing to instruct the jury concerning the necessity of corroborating Graves' testimony. By A.R.S. § 13–136 a conviction may not be had on the testimony of an accomplice unless corroborated by other evidence which in itself and without aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense. We have repeatedly said that the test to determine whether a witness is an accomplice is whether the witness could be informed against for the same crime which defendant stands accused. See e. g. State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739; State v. Sims, 99 Ariz. 302, 409 P.2d 17.

■ Defendant takes as literal the language of this test, pointing out that Graves had been jointly informed against with Owens. We do not think that the statement of the rule is to be construed as meaning that the witness was in fact informed against as an accomplice, but whether the witness could properly be informed against for the same crime which defendant was accused. A person might be informed against for a crime which, for numerous reasons might be a charge improperly brought. Here, since in Arizona by A.R.S. § 13–139 accomplices are punishable as principals, the trial judge in directing a verdict of acquittal could only have found as a matter of law that Graves was improperly informed against.

A.R.S. § 13–136 was adopted from California. It was early held there in People v. Kosta, 14 Cal.App. 696, 112 P. 907 [1910] that the fact that defendants have been jointly charged does not raise a conclusive presumption they are accomplices. It has also been held that where two defendants are jointly charged with a crime that fact

does not determine the question as to whether they are in fact and in law accomplices and that a verdict of not guilty as to one is a finding of fact that he was not an accomplice of the other:

"Whether Lawson was an accomplice was a question of fact for the trial court. When the judge found Lawson not guilty, that question was determined adversely to defendant's contention. The fact that two defendants are jointly charged with crime does not determine the question as to whether they are in fact and in law accomplices. And a verdict of not guilty as to one defendant is a finding of fact that he was not an accomplice of another defendant convicted of the same crime with which both were charged. [Citations]." People v. Lawson, 114 Cal.App.2d 217, 249 P.2d 850.

Judgment affirmed.

McFARLAND, C. J., UDALL, V. C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.