552 P.2d 1212

**The STATE of Arizona, Appellee,**

v.

**William Ray GREER, Appellant.**

**No. I CA–CR 1539.**

Court of Appeals of Arizona,
Division 1.

July 1, 1976.

Rehearing Denied Aug. 4, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

## OPINION

KRUCKER, Judge.

The sole issue in this appeal is whether the trial court erred in allowing the prosecutor to use the testimony of a witness as recorded at the preliminary hearing. Appellant concedes that such matter is committed to the trial court's discretion, *State v. Pereda*, 111 Ariz. 344, 529 P.2d 695 (1974), but contends that discretion was abused for the reason that the State did not make the requisite showing of a good faith effort to locate the witness.

A preliminary hearing was held on September 16, 1974, at which two witnesses for the State testified—Edward Garrett and Richard Greeling. Appellant was held to answer and on September 25, 1974, an information was filed charging him with two counts of robbery while armed with a gun or deadly weapon. One count alleged that on August 20, 1974, appellant robbed Edward Garrett and the other count alleged that on the same date he robbed Richard Greeling. The case was set for trial on November 26, 1974 and, after several continuances, was set for January 22, 1975. Appellant did not appear and a bench warrant for his arrest was issued on January 22. On June 24, 1975 the case was reset for trial on July 1. On June 27 it was reset for trial on July 15, when it was again reset for August 14. On August 14, the trial was postponed once again until August 18.

On the date set for trial, the court conducted an evidentiary hearing on the

State's request that the testimony of Edward Garrett be presented by way of the preliminary hearing transcript of his testimony. At the conclusion of the hearing, the State's motion was granted, the court finding that the efforts made by the State to secure service of a subpoena upon the witness were appropriate under the circumstances.

The jury returned a verdict finding appellant guilty of the robbery of Garrett and not guilty of the robbery of Greeling. The only witnesses for the State were Greeling, Ira Black (a security officer for Circle K Corporation whose duty it was to perform audits to determine shortages), and the preliminary hearing transcript of Edward Garrett's testimony.

Our perusal of the record satisfies us that Garrett's testimony was essential to the State's case and therefore, if his recorded testimony was erroneously admitted, we cannot apply the "harmless beyond a reasonable doubt" doctrine. The two armed robberies with which appellant was charged occurred on the premises of a ·Circle K market located at 702 East Baseline Road, Phoenix, Arizona, at approximately 10:00 p. m. on August 20, 1974. According to Mr. Greeling, appellant resembled the man who had the gun. He did not, however, testify that he saw appellant point the gun at anyone else. The substance of his testimony concerning the Circle K robbery was that when he walked into the market he saw someone behind the counter ·taking cash out of one of the cash boxes and he "turned around and faced a gun." According to him, appellant, who was holding the gun, commanded him to go to the back and he heeded the command, going to the cooler. When he went inside the cooler, two other people were there, an older woman and a young Negro. Although he did not know the lady's name, Greeling testified that she was a Circle K employee but he had never seen the young man before. Mr. Black's testimony was only with respect to the amount of money missing from the cash registers, i. e., $396.00.

In his argument to the court, defense counsel pointed out the importance to appellant's case of the right to confront Garrett because his whole defense depended upon the ability of the State's witnesses to identify him. The prosecutor argued that the State had another witness who had made "a tentative identification" and therefore Garrett's testimony was "a corroborative type of identification". He did admit, however, that it was critical to the case in that it might be "the way that the State can make the case".

Rule 19.3(c), Rules of Criminal Procedure, permits the use of prior recorded testimony against a defendant if the defendant had the right and opportunity to cross-examine the declarant with an interest and motive similar to his present motive and the witness is unavailable. As pointed out in the Comment to the Rule, Rule 19.3(c) contains as broad an exception to the hearsay rule for prior recorded testimony as the confrontation clause of the Sixth Amendment will permit. There is no question but that appellant was present at the time the testimony was recorded and was represented by counsel. No question is raised as to whether he had an opportunity to cross-examine with an interest and motive similar to that which he had at trial and the record reflects that Garrett was extensively cross-examined at the preliminary hearing. The only question is whether the inability to procure Garrett's testimony at trial was due to the fault of the State.

In *State v. Pereda*, supra, our Supreme Court indicated that it regarded the factual evidence of a good faith attempt and failure to subpoena a witness in *State v. Owens*, 103 Ariz. 541, 447 P.2d 233 (1968) as "the outer limit of a court's discretionary judgment." 111 Ariz. at 345–46, 529 P.2d at 696. In the *Owens* case, the witness Graves, an itinerant laborer, had recently been released from custody following a mistrial in a proceeding in which he and Owens had been codefendants. A subpoena was issued and given to a detective ser-

geant of the Yuma Police Department, who twice visited the area where Graves was known to live, although he had no fixed abode. The subpoena was then turned over to a Yuma County Deputy Sheriff who again visited the area, talked to a number of people, and concluded that Graves had left town, probably for California. In *Pereda*, supra, the court stated:

"The fact that Graves was an itinerant worker with no fixed place of abode, no place of business, and a suspected accomplice recently released from custody, gave credence to the trial court's conclusion that he had probably left the area. These facts coupled with the efforts of the police and sheriff's department personnel to personally serve the subpoena indicated that the trial court had not abused its discretion in concluding that a good faith effort had been made by the State to subpoena Graves and that he was unavailable as a witness." 111 Ariz. at 346, 529 P.2d at 697.

In *Pereda*, supra, subpoenas were sent to every county in Arizona except Maricopa even though the prosecutor knew that the witness had a known address in Maricopa County, maintained a one-half interest in a business there, and had been previously served with a subpoena there. An agent of the Department of Public Safety testified that his efforts to serve the witness consisted solely of a series of 13 telephone conversations with the witness's parents and two telephone conversations with the witness. He did not go to the parents' house even though the subpoena listed the house as the witness's address, and, in addition, made no attempt to determine whether the witness had a public utility hookup or telephone service. The court held that the State's attempts to locate the witness and serve him with a subpoena fell far short of the requisite steps necessary to sustain the trial court's finding of a good faith effort.

The evidence presented by the State in support of its motion consisted of the testimony of John Langdon, an investigator for the Maricopa County Attorney's office. He testified as follows. He was first requested to locate Garrett on January 20, 1975. (This would appear to be two days prior to the trial date of January 22, 1975.) According to Langdon, he "checked all the local sources" for current address and was unable to find any. He described the "local sources" as driver's license, motor vehicles. He did not recall whether he checked the post office, although he stated that such was "normally the routine". He was unable to find a current address for Edward Garrett and was unable to locate him. He did nothing further at that time to ascertain Garrett's whereabouts. On June 23, 1975, he received another request to locate Edward Garrett. (As noted above, on June 24, 1975, a July 1, 1975 trial date was set.)

When Langdon received the request to locate Garrett, he again contacted the Driver's License Bureau and was informed that Garrett's license had been suspended; he then contacted the Motor Vehicle Department and was informed that on February 11, 1975, Garrett had registered a 1961 vehicle giving the address of 8214 South 24th Street, in Phoenix, Arizona. This information was acquired on June 24 and was relayed to the prosecutor as Langdon did not have a subpoena. On June 30, Langdon received the subpoena and on July 1 went to the South 24th Street address but was unable to contact anyone at that address. He returned on July 2, when he spoke to a woman who identified herself as Garrett's sister-in-law. She told him that Edward Garrett had moved from that address three or four months previously and she had not seen him since. She gave Langdon the address of Garrett's mother in Charleston, South Carolina. Langdon called the mother in South Carolina, who told him she had not heard from Garrett since about January, 1975. At that time Langdon returned the subpoena as "unable to locate". He returned to the

South 24th Street address August 18th, the morning of the hearing, and again was unable to contact anyone there.

On cross examination, Mr. Langdon was questioned about other efforts to locate Garrett. He could not recall whether anyone advised him that Mr. Garrett had worked for Circle K Corporation and he had never contacted anyone at Circle K Corporation regarding Garrett. He made no attempt to ascertain from any source Garrett's Social Security number and did not check with any State or Maricopa County office other than the Motor Vehicle Department in an attempt to locate Garrett. His documentation concerning his efforts referred only to the June request to locate Garrett. He did not check with the State Tax Department as to whether or not Garrett filed a 1974 tax return and did not check with the License Plate Division of the Maricopa County Assessor's Office. He could not recall whether or not he had been furnished Garrett's last known address by the County Attorney's Office. He did, however, receive a police departmental report in January which reflected that Edward Garrett's address was listed as 8241 South 24th Street. Langdon made no attempt to mail a letter to the South 24th Street address, addressed to Edward Garrett, and did not recall whether he had made an inquiry of the Phoenix post office concerning Mr. Garrett.

According to Mr. Langdon, he never contacted the telephone company or any other utility company to ascertain if there had been a telephone or utility hook-up for Garrett. He testified as to his conversation with Garrett's sister-in-law:

"Q. Did you obtain from her the names of some of Mr. Garrett's known friends and acquaintances?

A. No sir.

Q. Did you ask her?

A. As I recall, I asked if there was anyone she knew of that I could contact in order to find him. The only name or number she could give me was that of his mother."

The record reflects that at the time of the robbery Garrett was employed at the Circle K market located at 702 East Baseline Road, Phoenix, Arizona. Garrett's testimony at the preliminary hearing on September 16, 1974, shows that he was then living at 1514 East Monroe. Thus we see that no attempt whatsoever was made to locate Garrett through Circle K Corporation. That such effort might have proved fruitful is borne out by the fact that the probation officer, in his pre-sentence report, indicated that he had contacted Circle K whereby he reached Garrett's brother, who was employed by Circle K. The brother advised him that Garrett was then living in Canada.

The record also reflects that although the original trial date was set for November 26, 1974, and several continuances were granted until January 22, 1975, Langdon was not requested to locate Garrett until January 20, 1975. Langdon made no further attempts to locate Garrett until June 24, 1975, the day after he received another request to locate him. He did not ask Garrett's mother any questions as to where Garrett was when she had last heard from him or whether she knew of anyone else who might have information as to Garrett's whereabouts. He did not ask Garrett's sister-in-law whether she knew of any friends or acquaintances of Garrett he might contact, nor did he ask where he might find her husband in order to speak to him. Furthermore, the 24th Street address was listed in the police report provided to Langdon in January. He did not check that address at that time nor was he instructed to do so by the prosecutor.

We are well aware that the trial judge has a broad discretion in determining whether a witness is inaccessible and whether the State has used diligence to try to locate the witness. "A good faith search does not mean that every lead, no matter how nebulous, must be tracked to

the ends of the earth, figuratively speaking." *Poe v. Turner*, 490 F.2d 329, 331 (10th Cir. 1974). However, the record here does not reveal timely and extensive efforts to locate the missing witness. *See People v. Beyea*, 38 Cal.App.3d 176, 113 Cal.Rptr. 254 (1974); *People v. Johnson*, 39 Cal.App.3d 749, 114 Cal.Rptr. 545 (1974).

 We believe that the responsibility for the conduct of the State's case rests with the prosecutor and it is his duty to supervise and coordinate the efforts to locate the witness known to be missing. *People v. Payne*, 30 Ill.App.3d 624, 332 N.E.2d 745 (1975). Here, the prosecutor knew in January, 1975, that Langdon had been unable to locate the witness. No additional leads were suggested to the investigator nor was he instructed to make additional efforts to locate. It was not until a week before the July trial date that the investigator was again requested to locate Garrett. This demonstrates a complete absence of any supervision or coordination by the prosecutor. The fact that an expert investigator did not exercise his full expertise in trying to locate a missing witness is no excuse, *Hewell v. State*, 136 Ga.App. 420, 221 S.E.2d 219 (1975), nor is a showing that had due diligence been exercised it would have been to no avail. *People v. Hunter*, 48 Mich.App. 497, 210 N.W.2d 884 (1973). We hold, therefore, that the trial court abused its discretion in finding that the State had made a sufficient effort to place Garrett under subpoena.

Since denial of the right of confrontation is a substantial violation of a constitutional right, it cannot be considered harmless error. *State v. Moore*, La., 305 So.2d 532 (1974). The United States Supreme Court, in a per curiam opinion in *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), stated:

"* * * As we pointed out in *Barber v. Page*, one of the important objects of the right of confrontation was to guarantee that the fact finder had an ad-

equate opportunity to assess the credibility of witnesses. * * *" 89 S.Ct. at 541.

Reversed and remanded for a new trial.

HOWARD, C. J., and HATHAWAY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).