634 P.2d 950

**STATE of Arizona, Appellee,**

v.

**Richard JIMENEZ, Appellant.**

No. 4829.

Supreme Court of Arizona,
In Banc.

Sept. 23, 1981.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Diane M. Ramsey, Gary Fadell, Asst. Attys. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

GORDON, Justice:

Appellant Richard Jimenez was convicted by a jury of two counts of armed robbery, one count of unlawful flight, two counts of aggravated assault and one count of first-degree murder. He was sentenced to life imprisonment without possibility of parole for twenty-five years for the murder count and to terms of years for the remaining counts to be served concurrently with the life sentence. We take jurisdiction of his appeal pursuant to A.R.S.Const. Art. 6, § 5(3) and A.R.S. § 13–4031 and affirm.

Appellant raises two questions for our consideration: first, whether prosecution of appellant for murder was barred by the doctrine of collateral estoppel; second, whether the trial court erred in denying appellant's motion for judgment of acquittal on the murder count. The facts necessary to a resolution of these questions are the following:

At approximately one o'clock on the morning of December 7, 1978, appellant and two associates, Phillip Jewell and Johnny Vallejos, robbed at gunpoint a Savco service station at the corner of Baseline Road and Central Avenue in Phoenix. Appellant entered the station's enclosed booth, and Vallejos remained outside the booth during the robbery. Jewell apparently stayed in the car which was parked in a nearby lot. The attendant at the gas station was Ms. Dawn Gallowich who had her thirteen-year-old son, David, with her. According to their testimony, appellant threatened to kill them both, made them lie on the floor and told them not to move. Approximately ten minutes after the robbers first arrived at the booth, and some minutes after they left, Ms. Gallowich called the police.

Also at about one o'clock, Sergeants Richardson and Wood of the Phoenix police were driving in the area of Baseline and 7th Street on routine patrol when they observed two individuals walking on 7th Street and a 1964 Chevrolet parked near the intersection with one person in it. Although the officers' suspicions were aroused, nothing came of their observations at that time. They continued their patrol

and very shortly thereafter observed the same car in a lot adjoining the Savco station. After driving more or less around the block, the police stopped their car near Central and turned off the lights. Sgt. Wood got out and walked into a yard to observe more easily what was happening in the lot, remained there for only a few seconds and then returned to the car.

Within a very few seconds, the Chevrolet, now with three people in it, passed the police car. Sgt. Richardson made a U-turn to follow and turned on the roof lights. The two officers had no idea at this time that the Savco station had been robbed. The Chevrolet did not stop for the police car and maintained an even speed of twenty to twenty-five miles per hour. After only seconds, however, it picked up speed, ran a stop sign and continued on. Within a few blocks, Richardson saw someone lean out the right side of the Chevrolet with a gun, and the occupants of the Chevrolet began firing at the police car. Subsequently, the Chevrolet made a number of turns by which time the police siren was on. The Chevrolet continued nonetheless, and more shots were fired at the police car. Within a few minutes the Chevrolet stopped in front of a house on West St. Catherine.

Richardson and Wood stopped behind the Chevrolet along with other police vehicles which had been called to assist. Richardson testified that he saw a man whom he identified as appellant get out of the passenger side of the Chevrolet and fire two shots in the direction of the police car. Richardson then heard a shotgun blast which hit appellant who fell to and remained on the ground. Vallejos got out of the passenger side, fired at the police car, was fired at by Sgt. Wood, and ran toward the back yard of the house, where he was subsequently found shot and dying. Finally, Jewell, the driver, got out of the driver's side and ran toward the back yard where he was apprehended by other police officers.

Both appellant and Jewell were charged with the felony murder of Vallejos pursu-

ant to A.R.S. § 13–1105.[1] Their trials were severed, and Jewell was acquitted of murder but was convicted of the underlying felony, robbery. Prior to his own trial, appellant filed a motion to dismiss the murder charge based on the doctrine of collateral estoppel, but the motion was denied. During trial he moved for judgment of acquittal on the murder count on the ground that the state had not presented substantial evidence that Vallejos was killed during "immediate flight" from the underlying felony. This motion was also denied as was his motion for a new trial from which Jiminez now appeals.

Appellant contends first that in the trial of Phillip Jewell the state had a full and fair opportunity to litigate the issue whether the death of Johnny Vallejos occurred during the commission of a felony or during an immediate flight therefrom. Because the state failed in its case by virtue of Jewell's acquittal, appellant believes the state should have been precluded by the doctrine of collateral estoppel from relitigating that issue against appellant. To adopt appellant's position would require that we delete from the application of collateral estoppel in criminal matters the element of identity or mutuality of parties. This we decline to do.

■ Collateral estoppel has been defined as meaning that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). The traditional elements of collateral estoppel are: the issue sought to be relitigated must be precisely the same as the issue in the previous litigation; a final decision on the issue must have been necessary for the judgment in the prior litigation; there must be mutuality of parties. Vestal, Issue Preclusion and Criminal Prosecutions, 65 Iowa L.Rev. 281 (1980).

Appellant points out that there has been a trend away from the mutuality requirement, *see, e. g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Berhnard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942); *Hossler v. Barry*, 403 A.2d 762 (Me.1979); Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457 (1968); *Vestal, supra*, and urges that we follow the trend. The trend has occurred, however, more in relation to civil than to criminal cases. *See State v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128 (1977); *Vestal, supra*. Many jurisdictions continue to require mutuality of parties in criminal cases. *E. g., State v. Swearingin*, 564 S.W.2d 351 (Mo.App.1978); *Larsen v. State*, 93 Nev. 397, 566 P.2d 413 (1977); *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977). This Court also requires mutuality of parties in criminal cases. *State v. Stauffer*, 112 Ariz. 26, 536 P.2d 1044 (1975).

■ Among those jurisdictions cited to us by appellant which no longer require mutuality of parties in certain criminal matters, some courts express serious concern that the integrity of the judicial system will be compromised by the rendering of inconsistent verdicts. *People v. Taylor*, 12 Cal.3d 686, 527 P.2d 622, 117 Cal.Rptr. 70 (1974); *Gonzalez, supra*. We do not believe, however, that the verdicts in the instant case were inconsistent. The evidence against Jewell and the appellant was not precisely the same. Jewell was the driver of the car and did not fire at the police, whereas appellant did. It is possible that the jury in Jewell's trial was influenced by his lesser culpability in the shooting which resulted in the death of Vallejos.

Nor do we feel the same concern for the possibility of inconsistent verdicts. We have stated in a different context that

1. The relevant portions of § 13–1105 are as follows:

"A. A person commits first degree murder if:

\*   \*   \*   \*   \*   \*

"2. Acting either alone or with one or more other persons such person commits \* \* \* robbery \* \* \* and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person."

"where a principal has been acquitted of a criminal act, * * * his accomplice [can], in a separate trial, be convicted of aiding and abetting that criminal act[.]" *State v. Spillman*, 105 Ariz. 523, 525, 468 P.2d 376, 378 (1970). Moreover, we are persuaded by the position articulated by the Pennsylvania Supreme Court that "there is also a significant public interest in not compounding the effect of a possibly erroneous or irrational verdict of acquittal." *Brown, supra*, 473 Pa. at 466, 375 A.2d at 335.

We find no reason, therefore, on the facts of this case to abandon the requirement of mutuality of parties for the application of collateral estoppel in criminal proceedings.

■ Appellant also predicates error on the trial court's denial of his various motions for judgment of acquittal on the murder count. He claims that the murder charge "should only have gone to the jury if the State had presented substantial evidence from which the jury could find beyond a resonable [sic] doubt that JOHNNY VALLEJOS was killed during the 'immediate' flight from the underlying felony." Appellant supports his contention that the state's evidence was insufficient with the argument that the officers knew nothing of the robbery when they began following the Chevrolet, that the occupants of the Chevrolet were obeying all laws when the pursuit first began and that there was, therefore, no flight from the robbery, "but only an unrelated flight from the pursuing officers."

We have held that a trial court should not grant a motion for acquittal "if reasonable minds can differ on the inferences to be drawn from the evidence." *State v. Superior Court*, 128 Ariz. 216, 223, 624 P.2d 1264, 1271 (1981). Furthermore, it has been held specifically that it is a jury question whether a homicide occurred in immediate flight from a felony so as to trigger felony murder. *People v. Gladman*, 41 N.Y.2d 123, 359 N.E.2d 420, 390 N.Y.S.2d 912 (1976).

In the case at bar, the evidence was such that a jury could find that the killing occurred during immediate flight from the robbery. The time between the end of the robbery and the shooting was very short, and the police began their pursuit very soon after the robbery and within only blocks of the Savco station. There was no real break in the chain of events set in motion by the robbery as the Chevrolet's occupants began their pattern of flight from the pursuing police within seconds of being followed.

We do not agree with appellant that the officers' initial lack of knowledge of the robbery affects whether appellant and his colleagues were in immediate flight. We agree rather with the court in *Gladman, supra*, which stated that

"[t]he standard is not whether the police officer subjectively believed that the defendant was the robber. Indeed, the defendant's own apprehension may be more valuable. The defendant's response to the observation of the police car was to seek an immediate hiding place. This indicates that the defendant perceived that the police were on his trail." 41 N.Y.2d at 129, 359 N.E.2d at 425, 390 N.Y.S.2d at 917.

The Appellate Court of Illinois adopted a similar position when it explained that "[defendants] were suspected of being the escaping robbers within four blocks and a few minutes of the crime. That fact is sufficient to support the inference that [defendants'] speeding and reckless driving were part of defendants' escape attempt." *People v. Burke*, 85 Ill.App.2d 939, 942, 407 N.E.2d 728, 731, 41 Ill.Dec. 230, 233 (1980). We hold, therefore, that the trial judge did not err by denying appellant's motions for acquittal.

Accordingly we affirm the judgment of the trial court.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.