665 P.2d 59

**STATE of Arizona, Appellee,**

v.

**Robert EDWARDS, aka Willie Barefield, Appellant.**

**No. 3957–2.**

Supreme Court of Arizona,
En Banc.

May 4, 1983.

Rehearing Denied June 14, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Michael J. Meehan, Tucson, for appellant.

FELDMAN, Justice.

Robert Edwards was convicted of first degree felony murder, armed robbery and armed burglary. He was sentenced to life imprisonment for murder, and two terms of twelve to thirty-five years for the other crimes, the terms to run concurrently.[1] He appeals. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031.

At approximately one o'clock on the morning of October 10, 1974, the La Conga Bar in Tucson, Arizona was robbed at gunpoint. The proprietor suffered a fatal heart attack during the robbery. The robbers obtained money and valuables and fled. The police investigation following the incident was unsuccessful. However, in January of 1976, Cleveland Reed, while in jail for unrelated charges, admitted his involvement in the La Conga Bar robbery and gave the police information which led to the arrest of defendant and several alleged co-conspirators. Reed was granted immunity from all charges stemming from the La Conga Bar incident in exchange for his testimony concerning the robbery.

Defendant raises several issues on appeal. Additional facts will be set out as necessary in the discussion of these issues.

## RIGHT OF CONFRONTATION

The defendant argues that his right of confrontation was violated by the admission of testimony given by Delores Williams at his second trial. The testimony had been admitted under Ariz.R.Crim.P. 19.3 and Ariz.R.Evid. 804(b)(1) because Ms. Williams was found to be "unavailable" at the third trial.

The right of an accused to confront an adverse witness is guaranteed by the sixth amendment to the United States Constitution[2] which is applicable to the states under the fourteenth amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965), and by art. 2, § 24 of the Arizona Constitution,[3] *State v. Pereda,* 111 Ariz. 344, 345, 529 P.2d 695, 696 (1974). This right has been considered one of the most important safeguards to a fair trial. Its purpose is to give an accused the

---

1. The first trial of defendant ended in a mistrial after the jury could not reach a unanimous verdict. Defendant's second trial resulted in convictions of the same charges of which he now stands convicted. The death penalty and concurrent sentences of twenty-five to fifty years were imposed. The convictions were affirmed by this court in *State v. Edwards,* 122 Ariz. 206, 594 P.2d 72 (1979). The case was remanded, however, for resentencing on the first degree murder conviction pursuant to *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978). On resentencing, the defendant was sentenced to life imprisonment. Defendant filed an application for a writ of certiorari with the United States Supreme Court. That court granted certiorari and reversed the judgment of conviction on the ground that the admission of defendant's confession had violated his right under the fifth and fourteenth amendments to have counsel present during custodial interrogation. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

This court then remanded the case to the Pima County Superior Court for a new trial, which is the subject of the present appeal.

2. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const. amend. VI.

3. "In criminal prosecutions, the accused shall have the right ... to meet the witnesses against him face to face ...." Ariz. Const. art. 2, § 24.

opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

Notwithstanding its essential nature in securing a fair trial, the confrontation clause has never been interpreted literally to require the exclusion of all statements of persons who do not appear at trial. The problem becomes determining when "considerations of public policy and the necessities of the case" permit dispensing with confrontation at trial. *Mattox v. United States,* 156 U.S. at 243, 15 S.Ct. at 340.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court formulated a two-step approach in order to accommodate these competing interests. Before the statements of a witness who is not present for cross-examination at trial may be admitted into evidence, the confrontation clause first requires a showing that the witness is unavailable. *Id.* at 65, 100 S.Ct. at 2538. Once a witness is shown to be unavailable, the statement is admissible only if it bears adequate "indicia of reliability." *Id.* at 65–66, 100 S.Ct. at 2539. This reliability may be inferred where the evidence falls within a "firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539; *Mancusi v. Stubbs,* 408 U.S. 204, 213–16, 92 S.Ct. 2308, 2313–15, 33 L.Ed.2d 293 (1972) (cross-examined prior trial testimony). The prosecution bears the burden of establishing these predicates. *Ohio v. Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538–39; *State v. Alexander,* 108 Ariz. 556, 561, 503 P.2d 777, 782 (1972).

To establish the element of unavailability, the State must have made a good-faith effort to obtain the witness' presence at trial. *Ohio v. Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543; *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *State v. Ray,* 123 Ariz. 171, 172, 598 P.2d 990, 991 (1979); *State v. Watson,* 114 Ariz. 1, 6, 559 P.2d 121, 126 (1976); *State v. Alexander, supra.* It is within the discretion of the trial court to determine whether the State has made a sufficient effort to locate the witness. *State v. Pereda, supra; State v. Owens,* 103 Ariz. 541, 543, 447 P.2d 233, 235 (1968); *State v. Greer,* 27 Ariz.App. 197, 201, 552 P.2d 1212, 1216 (1976), *overruled on other grounds, State v. Hughes,* 120 Ariz. 120, 128, 584 P.2d 584, 592 (App.1978). In the instant case, the trial court determined that the State made a good-faith effort to locate Delores Williams. Defendant claims that the evidence was not sufficient to support that ruling.

The evidence offered by the State on this issue consisted of the testimony of Carl Kishman, an investigator for the Pima County Attorney's Office. Kishman testified that two weeks prior to the trial, the prosecuting attorney instructed him to locate and subpoena Delores Williams. Kishman first checked the records of the local utility company. The records indicated that a Delores Williams had been receiving utility service at 1802 East 31st Street in Tucson, but service under that name had been discontinued three months earlier. He then checked the police and sheriff records. The police records revealed that an arrest warrant had been issued for Williams in connection with a previous hearing; Kishman testified that the address listed on the warrant was the same residence on 31st Street. He then checked, without success, the Tucson city directory, telephone directory, and the local office of the Department of Economic Security; he also contacted the Florence Prison to see if the witness' brother had been in touch with her.

Kishman located and was able to talk with the witness' mother. The mother told him that she believed Williams had moved to Seattle, Washington, but she did not know how to reach her daughter. Following this lead, Kishman telephoned the district attorney's office in Seattle and requested that a search be made in that city

for the witness. Kishman testified that a Seattle investigator had been unsuccessful in locating Williams.

We note first that no subpoena was issued for this witness. Defendant argues that under *Alexander, supra,* failure to issue a subpoena establishes the lack of a "good-faith effort" as a matter of law. We are unwilling to adopt so strict a rule. Ordinarily, a good-faith effort would require issuance of a subpoena and diligent efforts to serve it. However, if the witness' whereabouts are unknown and if the prosecution makes a diligent but unsuccessful effort to locate the witness, issuance of a subpoena which could not be served would add nothing and would be futile. As stated previously, the true issue is whether the State made a good-faith effort to *locate* the witness so that he or she could be put under subpoena. *State v. Pereda, supra.*

Defendant argues with persuasive force that the State's attempt to locate the witness was far from thorough. Kishman testified that during his investigation of police records he found a warrant which had been issued at the State's request to ensure Williams' presence at defendant's second trial. Kishman testified that the warrant contained the same address on 31st Street in Tucson. There was also evidence in the record that Williams had lived at that address in 1977 and that her mother had also resided there. In spite of these facts, Kishman did not check the address to confirm that Williams had moved. Kishman was aware that this witness had used aliases. As far as the State knew, the witness was continuing to live at the 31st Street address and had obtained utility service under a different name. The investigator did not interview any neighbors in this area to see if they had information on Williams' whereabouts. In addition, the State did not make a postal check to see if the witness had left any forwarding address.

The State left other leads untouched as well. The bench warrant Kishman discovered in police records also contained six additional addresses where Williams might be found. None of these leads was pursued.

The State was also aware that Williams had a boyfriend in Tucson and had lived with him in the past, but no attempt was made to find the friend or check the address to see whether Williams was living there again.

We acknowledge that "a good faith search does not mean that every lead, no matter how nebulous, must be tracked to the ends of the earth . . . ." *State v. Greer,* 27 Ariz.App. at 201–02, 552 P.2d at 1216–17; however, obvious and essential leads must be investigated. An appropriate standard to apply is to ask whether the leads which were not followed would have been the subject of investigation if the State had been trying to find an important witness and had no transcript of prior testimony. *See United States v. Mann,* 590 F.2d 361, 367 (1st Cir.1978); *United States v. Lynch,* 499 F.2d 1011, 1023 (D.C.Cir.1974).

The State argues that the lack of complete investigation in Tucson was justified because the witness' mother had told the investigator that she believed her daughter had moved to Seattle, Washington. The fact that a witness has possibly left the jurisdiction does not result in the automatic finding of unavailability. *State v. Briley,* 109 Ariz. 74, 75–76, 505 P.2d 245, 246–47 (1973); *State v. Ratzlaff,* 27 Ariz.App. 174, 176, 552 P.2d 461, 463 (1976). In situations where there is evidence that the witness has left the jurisdiction, the State must continue to use diligent efforts to locate the witness. As with the service of in-state subpoenas, a good-faith effort would ordinarily require the State to utilize the Uniform Act to secure the Attendance of Witnesses from Without a State in Criminal Proceedings, A.R.S. §§ 13–4091 to –4096, unless to do so would be futile. *See State v. Ray,* 123 Ariz. at 173, 598 P.2d at 992; *State v. Alexander, supra.*

The State did not attempt to invoke the Uniform Act. The State claims that it would have been futile to do so because an effort was made to locate the witness in Seattle and the investigation established that the witness could not be located. The

record does not support this conclusion. The only evidence which the State presented concerning the efforts to locate Williams in Seattle was the following testimony given by Kishman:

Q. And was [the Seattle investigator] successful [in locating Williams]?

. . . .

A. . . . he called me back later after he told me he had concluded his search.
Q. Did you ask him if he found Miss Williams?
A. Yes, I did.
Q. What was his answer?
A. His answer was no.

■ Defendant argues that this evidence fails to establish a good-faith effort because it was hearsay. In deciding preliminary questions involving the admissibility of evidence, the hearsay rules do not apply. *State v. Spratt*, 126 Ariz. 184, 186, 613 P.2d 848, 850 (App.1980); Ariz.R.Evid. 104(a). Regardless of its character, however, this evidence falls far short of a legal showing of good-faith effort. The simple statement that a search was made and it proved fruitless provides only conclusions; it provides no facts from which the trial court may exercise its discretion to determine whether a good-faith effort had been made to locate the witness in the state of Washington. As we stated in *State v. Alexander:* "[I]t is implicit in the constitutional rights of due process and face to face confrontation that the moving party should make an actual showing through competent evidence, sufficient to convince the court that the witness *in fact* cannot be produced." 108 Ariz. at 562, 503 P.2d at 783 (emphasis in original). *See also McCreight v. State*, 45 Ariz. 269, 272–74, 42 P.2d 1102, 1103 (1935); *Valuenzuela v. State*, 30 Ariz. 458, 461, 248 P. 36, 37 (1926); *compare State v. McDaniel*, 136 Ariz. 188 at 195, 665 P.2d 70 at 77 (1983); *State v. Watson, supra*, (evidence of good-faith effort included sworn affidavits by officials describing efforts made to locate witnesses).

■ We conclude that the State failed in its burden of showing facts that establish that the witness could not be located. The facts that were shown establish that the investigative efforts to locate Williams were significantly less than would be expected for such an important witness. It is quite possible, as defendant argues, that if the State had not had a transcript of Williams' prior testimony, it certainly would have started the search earlier and been more thorough in its investigation. We hold, therefore, that the discretionary determination of a good-faith effort to locate the witness is unsupported by the record, *State v. Pereda, supra;* thus, the admission of Williams' prior testimony was error which violated defendant's right of confrontation under the constitutions of the United States and Arizona. Since the first element of the *Ohio v. Roberts* test was not satisfied, we need not address the "indicia of reliability" element.

■ We must now consider whether the error in admitting such prior testimony can be considered harmless. *See State v. Ray*, 123 Ariz. at 173, 598 P.2d at 992. Williams' testimony corroborated the accomplice's version of the events surrounding the robbery. Her testimony also destroyed defendant's alibi claim. During their deliberations, the jury requested that Williams' prior testimony be reread to them, stating: "Entire testimony is essential to our deliberations." Based on these facts, there is certainly a reasonable possibility that the error contributed to the verdict. *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The error in admitting the prior testimony, therefore, cannot be considered harmless.

The following issues raised by defendant will be addressed for purposes of the new trial.

## FLIGHT INSTRUCTION

At trial, the State was allowed to present evidence that defendant fled from police when he was being arrested. The trial court instructed the jury on the issue of flight and defendant claims that the court erred in giving the instruction.

The flight of an accused is viewed as an admission by conduct. *State v. Hunter,* 136 Ariz. 45 at 48, 664 P.2d 195 at 198 (1983); 1 M. Udall & J. Livermore, Arizona Practice, *Law of Evidence* § 125, at 256 (2d ed. 1982). In Arizona, flight or concealment of an accused is a fact which may be considered by the jury as raising an inference that the accused is guilty. *State v. Loyd,* 126 Ariz. 364, 367, 616 P.2d 39, 42 (1980); *State v. Swinburne,* 116 Ariz. 403, 413, 569 P.2d 833, 843 (1977). Evidence of an accused's resistance to arrest is also admissible as evidence of consciousness of guilt, and thus of guilt itself. *See United States v. Peltier,* 585 F.2d 314, 323 n. 7 (8th Cir.1978); *United States v. Graham,* 548 F.2d 1302, 1313 n. 13 (8th Cir.1977); *United States v. Ramirez,* 460 F.2d 1322, 1323 (10th Cir.1972); 2 J. Wigmore, *Evidence in Trials at Common Law* § 276, at 122 (J. Chadbourn rev. 1979). Before a flight instruction may be given, however, there must be evidence of flight from which can be inferred a consciousness of guilt for the crime charged. *See United States v. Jackson,* 572 F.2d 636, 639 (8th Cir.1978); *United States v. White,* 488 F.2d 660, 662 (8th Cir.1973); *see also State v. Clark,* 126 Ariz. 428, 434–35, 616 P.2d 888, 894–95 (1980); *State v. Gray,* 122 Ariz. 445, 448, 595 P.2d 990, 993 (1979).

The State presented evidence that approximately fifteen months after the robbery, two plainclothes police officers went to defendant's home to place him under arrest. The officers identified themselves to the defendant, handed him an arrest warrant and told him he was under arrest for murder. The defendant looked at the warrant, backed away from the officers and told them he was not going with them. A struggle ensued and the defendant broke away from the officers and ran. He was apprehended by a third officer and taken into custody.

Defendant argues that the circumstances of his arrest were insufficient to support the inference that he fled because of a consciousness of guilt concerning the crime charged. Defendant argues that because it occurred long after the commission of the offense, his flight could have been in response to something other than feelings of guilt about the La Conga Bar incident. Thus, defendant contends that the weak probative value of the evidence was outweighed by the danger of unfair prejudice. We cannot agree.

Initially we note that there was no evidence of any other reason for defendant's flight. Further, the arresting officers had identified themselves and informed the defendant that he was being arrested for murder. *See United States v. Martinez,* 681 F.2d 1248, 1258 (10th Cir.1982); *United States v. Jackson,* 572 F.2d at 641; *United States v. White, supra.* There was, therefore, sufficient evidence from which the jury could infer that the defendant fled because of a consciousness of guilt concerning the crime charged. Accordingly, a flight instruction was proper.

## ACCOMPLICE TESTIMONY

Defendant claims that the trial judge erred in failing to grant his motion for a directed verdict of acquittal on the grounds that there was not sufficient evidence to corroborate the testimony of Cleveland Reed, the accomplice.

Reed's testimony was the only direct evidence of defendant's participation in the robbery. Reed described the facts of the robbery as follows. At midnight on the morning of October 10, 1974, Reed, defendant and three other individuals went to the La Conga Bar for the purpose of committing a robbery. After the group waited outside the bar for awhile, the owner, Carlos Mungia, came out the front door of the bar accompanied by Nellie Esparza, the barmaid. Reed grabbed Mungia, held a gun on him and told him it was a robbery. Defendant, who also had a gun, grabbed Esparza. Reed forced Mungia through the bar and into the back office where the safe was located. Defendant followed with Esparza. Reed ordered Mungia to open the safe and Mungia complied. Reed testified that defendant asked Mungia if that was all the money and then began screaming and

cursing at Mungia, put his gun to Mungia's neck and threatened to kill him. Mungia did not reply but slumped in a chair and began making a snoring sound. Reed told Esparza to call an ambulance and the robbers ran from the bar with the stolen property.

To avoid being apprehended, the group split up and arranged to meet a few hours later at defendant's house. When Reed arrived at the house a few hours later, the others had already arrived. A woman (Delores Williams) was also in the house. Reed then attempted to divide the money, but the defendant told him there was no money. Reed accused the group of trying to "rip him off" and left the house.

Defendant argues that this testimony of Reed, an accomplice, was not sufficiently corroborated. At the time the crime in question was committed, A.R.S. § 13–136 read:

> A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Although the statute was repealed, effective June 24, 1976, it was in effect at the time of the crime and is therefore applicable to this case. *State v. Morales,* 129 Ariz. 283, 286, 630 P.2d 1015, 1018 (1981).

The purpose of the corroboration requirement is to ensure that there is "some evidence in the case which is legally sufficient to lend credibility to the statements of the accomplice." *State v. Sheldon,* 91 Ariz. 73, 79, 369 P.2d 917, 921 (1962). The evidence need not directly connect the defendant with the offense. *State v. Canada,* 107 Ariz. 66, 67, 481 P.2d 859, 860 (1971); *State v. Sheldon, supra.* Sufficient corroboration may be established by circumstantial evidence. *State v. Bagby,* 83 Ariz. 83, 85, 316 P.2d 941, 942 (1957). Whether there has been sufficient corroboration will be determined by the facts of each case. *State v. Springer,* 102 Ariz. 238, 240, 428 P.2d 95, 97 (1967); *State v. Sheldon,* 91 Ariz. at 79, 369 P.2d at 922.

Turning to the evidence presented at trial, there is little in the way of corroboration by direct testimony. We have held that Delores Williams' testimony was improperly admitted, and must conclude, therefore, that her testimony may not be considered as part of the corroborating evidence. The only other direct evidence which might be considered is that of Nellie Esparza, the barmaid. She testified concerning the events of the robbery but provided no evidence of defendant's complicity, since she was unable to identify either of the men who entered the bar. She does little by way of corroborating Reed's testimony since her version of the affair is different than his. The State concedes that Esparza's testimony does not provide sufficient corroboration. The State argues that Reed's testimony was corroborated by defendant's flight at the time of his arrest. Defendant claims that his flight does not corroborate Reed's version of the robbery and therefore does not provide sufficient corroboration.

Arizona's corroboration statute was adopted from California. *State v. Sheldon,* 91 Ariz. at 77, 369 P.2d at 920. In *Sheldon,* we pointed out that the statute required only evidence which "tends to connect" the defendant to the crime. We defined this as evidence which would "lend credibility to the statements of the accomplice," and held that the corroborating evidence need only give the jury "a sufficient basis for *believing* the testimony of the accomplice." *Id.* at 79, 369 P.2d at 921. No particular part of the accomplice's testimony need be corroborated. The test is whether "from [the] circumstances, [defendant's] connection with the crime may be fairly inferred . . . ." *Id.* at 79, 369 P.2d at 921–22.

Evidence of flight supports an inference of an accused's consciousness of guilt of the crime charged and thus tends to connect the accused with the commission of

the offense. *People v. Perry,* 7 Cal.3d 756, 103 Cal.Rptr. 161, 170, 499 P.2d 129, 138 (1972); *People v. Santo,* 43 Cal.2d 319, 330, 273 P.2d 249, 255 (1954). We find, therefore, that evidence of defendant's flight was sufficient corroboration for purposes of A.R.S. § 13–136.

## SUFFICIENCY OF THE EVIDENCE

The defendant was charged and convicted of felony murder, a violation of A.R.S. § 13–1105(A)(2), which provides in pertinent part:

A. A person commits first degree murder if:

. . . .

2. Acting either alone or with one or more other persons such person commits or attempts to commit ... burglary under § 13–1506, 13–1507 or 13–1508, ... robbery under §§ 13–1902, 13–1903 or 13–1904, ... and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person *causes the death of any person.*

(Emphasis supplied.) The defendant argues that the trial court erred in denying his motion for judgment of acquittal on felony murder because the State presented insufficient evidence to prove that he, or one of his accomplices, caused the death of the victim in the course of and in furtherance of the robbery or burglary.

Under Ariz.R.Crim.P. 20(a):

[T]he court shall enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction.

■ The substantial evidence the State is required to present in order to avoid a directed verdict of acquittal is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *State v. Tison,* 129 Ariz. 546, 552–53, 633 P.2d 355, 361–62 (1981); *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1979); *cf. Jackson v. Virginia,* 443 U.S. 307,

315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979).

■ On the issue of the cause of Mungia's death, the State presented evidence that during the robbery, either Reed or the defendant placed a gun against Mungia's neck. After this, Mungia's face went blank, he slumped in a chair and began making a snoring sound. When the police arrived at the scene, Mungia was dead. Dr. Edward Brucker performed an autopsy on Mungia and was called to testify to the cause of Mungia's death. He stated that in his opinion the fatal heart attack was caused by the "fright-flight-fight syndrome." Under this theory, when a person is faced with a stressful or frightening situation, his body will manifest certain reactions. Adrenalin will start to flow and the heart will begin to pound hard, supplying the higher requirement of increased blood to the muscles, preparing the person to fight or flee. It was Brucker's opinion that because of Mungia's poor health, the fright-flight-fight syndrome precipitated by the robbery had been responsible for his attack and death.

On cross-examination, Brucker admitted that because of the advanced state of Mungia's pre-existing heart disease, a coronary attack could have been prompted by other causes completely independent of the robbery. In spite of these potential causes, the doctor stood by his opinion that Mungia's attack and death were caused by the anxiety of the robbery.

We believe that there was sufficient evidence before the jury to support the finding that the attack was caused by the robbery. *See State v. Edwards,* 122 Ariz. 206, 216, 594 P.2d 72, 82 (1979), *reversed on other grounds,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

## COLLATERAL ESTOPPEL

■ Willie Williams was also arrested and tried for felony murder and armed robbery in connection with the La Conga Bar incident. The accomplice, Reed, testified that Williams was part of the group

that planned to commit the robbery but that Williams waited outside the bar when Reed and defendant entered. Williams' trial was severed from defendant's. Prior to the commencement of defendant's trial, a jury acquitted Williams of the murder charge but convicted him of the underlying felony, armed robbery.

In the instant case, after the State presented its evidence, defendant moved for a judgment of acquittal on the murder charge. Defendant argued that since Williams was acquitted of felony murder but convicted of armed robbery, causation was the only issue on which the jury could have rationally based the acquittal of murder. The jury in the Williams trial could not have found him guilty of robbery but innocent of felony murder without finding that the commission of the armed robbery did not cause Mungia's death. Therefore, defendant argued, the principle of collateral estoppel precluded the State from relitigating that issue against him. Defendant's motion was denied, as was his motion for a new trial from which defendant now appeals.

Collateral estoppel has been held to bar relitigation *between the same parties* of an issue decided at a previous trial if the issue necessarily decided at the previous trial is identical to the one sought to be relitigated. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Defendant contends that the doctrine of collateral estoppel barred the State from relitigating the issue of causation in his trial. The issue of causation, however, was not litigated and decided in a prior action between the State and defendant, but rather, in a prior action between the State and Williams. To adopt defendant's argument, it would be necessary to delete the element of mutuality of parties from the application of collateral estoppel in criminal matters.

We faced this identical issue in *State v. Jimenez,* 130 Ariz. 138, 634 P.2d 950 (1981), and under the facts of that case refused to abandon the requirement of mutuality in criminal matters. The defendant asks this court to re-examine its holding in *Jimenez.*

We are aware that the modern trend in civil cases has been to abandon the requirement of mutuality. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (trial court may dispense with requirement of mutuality and permit offensive use of collateral estoppel where lack of mutuality is not unfair and where the circumstances of the particular case indicate that the issue to be precluded was decided under conditions where opposing party in prior action had adequate incentive and opportunity to fully litigate issue); *but see Standage Ventures, Inc. v. State,* 114 Ariz. 480, 484, 562 P.2d 360, 364 (1977) (nonmutual collateral estoppel limited to situations involving *defensive* use of doctrine). Whatever the wisdom of permitting nonmutual collateral estoppel in civil matters, we are not persuaded that it is a wise policy in criminal cases.

The United States Supreme Court recently addressed this same issue in *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In *Standefer,* the defendant had been convicted of aiding and abetting a government agent in the commission of a crime, although the agent had been acquitted of that very crime in a previous proceeding. The Supreme Court refused to delete the requirement of mutuality from collateral estoppel in criminal matters and affirmed the conviction. *Id.* at 26, 100 S.Ct. at 2009.

In reaching its conclusion, the Supreme Court analyzed the different considerations present in a criminal proceeding. First, in a criminal case, the government is often without the kind of "full and fair opportunity to litigate" an issue that is a prerequisite of estoppel. *Id.* at 22, 100 S.Ct. 2007.

[T]he prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, cf. Fed.Rule Civ.Proc. 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the

weight of the evidence, cf. Fed.Rule Civ. Proc. 59; and it cannot secure appellate review where a defendant has been acquitted. See *United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

*Id.* at 22, 100 S.Ct. at 2007.

Second, the application of collateral estoppel in criminal cases is complicated by rules of evidence and exclusion unique to criminal law. *Id.* at 23, 100 S.Ct. at 2008. Thus, evidence may be suppressed and inadmissible against one defendant, resulting in an acquittal, while the same evidence could properly be admitted against a second defendant whose rights had not been violated. *Id.* at 23–24, 100 S.Ct. at 2008.

Finally, there is an important interest in the enforcement of the criminal laws. *Id.* at 24, 100 S.Ct. at 2008. While the concerns of judicial economy may be a significant factor in applying the doctrine of collateral estoppel in civil cases, the "public interest in the accuracy and justice of criminal results is greater ...." *Id.* at 25, 100 S.Ct. at 2008 (*quoting United States v. Standefer,* 610 F.2d 1076, 1093 (3rd Cir.1979)). As we recognized in *Jimenez,* there is "a significant public interest in not compounding the effect of a possibly erroneous or irrational verdict of acquittal." 130 Ariz. at 141, 634 P.2d at 953 (*quoting Commonwealth v. Brown,* 473 Pa. 458, 466, 375 A.2d 331, 335 (1977)).

We agree with the *Standefer* analysis and adopt its rationale. Acknowledging with Chief Justice Burger that "justice must satisfy the appearance of justice," we conclude, nevertheless, that in criminal cases we must accept the "discomforting reality that 'different juries may reach different results under any criminal statute.'" *Id.* 447 U.S. at 25, 100 S.Ct. at 2008–09. Therefore, we again decline to abandon the requirement of mutuality of parties in criminal matters and hold that the trial court did not err in denying defendant's motions for directed verdict on this issue.

Accordingly, the judgments of conviction and sentences are reversed and the case is remanded for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.