684 P.2d 912

**STATE of Arizona, Appellee,**

v.

**John Gary CANADAY, Appellant.**

**No. 1 CA–CR 6344.**

Court of Appeals of Arizona,
Division 1, Department D.

May 17, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Seplow, Rivkind & Gladner, P.C. by Philip A. Seplow, Phoenix, for appellant.

## OPINION

JACOBSON, Chief Judge.

The basic issue presented by this appeal is whether a statement given to a police officer by an accomplice in a custodial interrogation is admissible against a co-defendant, when the accomplice is deceased at the time of trial.

The defendant, John Gary Canaday, was charged by grand jury indictment with one count of conspiracy to commit a fraudulent scheme and one count of engaging in a fraudulent scheme. A jury found the de-

fendant guilty of conspiracy, but was deadlocked on the question of the verdict on the charge of fraudulent scheme. When the jury could not reach a verdict on the charge of engaging in a fraudulent scheme, the trial court granted the state's motion to dismiss this count with prejudice. The defendant was subsequently sentenced on the conviction of the crime of conspiracy to commit a fraudulent scheme. This appeal followed.

On review, three issues are raised:

1. Whether appellant's right to confront witnesses was breached through the admission into evidence of the confession of an accomplice who was deceased at the time of trial;

2. Whether prejudicial error occurred during jury *voir dire* and deliberations;

3. Whether A.R.S. § 13–604(B) unconstitutionally discriminates between prior class 2 or 3 and class 4 or 5 felonies for purposes of enhancement of punishment.

This criminal prosecution arose out of the passing of checks which had first been stolen from a Chandler business, M & M Tire Company, and then forged. The defendant and his brother Clyde Canaday were arrested in connection with the forgeries. The cases of the two brothers were severed for purposes of trial. Also involved were Joseph Schultis, an accomplice who was indicted on charges arising out of the forgeries but who died in an automobile accident prior to trial, and Robert Hellman, who participated in the passing of the forged checks and who testified against the defendant at trial.

After the burglary of M & M Tire Company was discovered, the stolen checks began to appear, having been cashed at various establishments, generally grocery or liquor stores. Robert Hellman testified that he was living with the defendant and the defendant's girlfriend, JoAnn Drysdale when the checks were forged. He stated that he was employed by the defendant as was Joseph Schultis. Hellman testified that when he moved in with the defendant and Drysdale, the two had a stack of M & M Tire Company checks. According to Hellman, the defendant and Drysdale affixed forged signatures to the M & M Tire Company checks and then aided Hellman and Schultis in passing the checks by providing them phony identification as well as transportation to various establishments where the checks were cashed. The evidence indicated that Joseph Schultis, a former employee of M & M Tire Company, had performed the burglary of the tire company in order to obtain the checks. According to Hellman, the defendant told Hellman that he had driven Schultis to the tire company and Schultis had broken into the office to obtain the checks while Canaday watched from the outside.

Law enforcement agencies investigating the forgeries interviewed Joseph Schultis in the course of that investigation. Schultis admitted his participation in the forgery scheme and told police that he got the checks from John and Clyde Canaday.

A handwriting expert, who testified for the state, told the jury that the checks were forged and that the defendant Canaday had written some of the forged signatures. The defendant testified in his own behalf and denied having participated in the check theft or in the forging or passing of the checks. Based on this evidence, the jury found the defendant guilty of conspiracy to commit a fraudulent scheme.

We first consider the defendant's argument that his Sixth Amendment right under the United States Constitution, to confront witnesses against him was violated when the trial court allowed Officer Nelson, of the Mesa Police Department, to testify regarding statements made to her by Joseph Schultis, who was deceased at the time of trial.

In attacking the use of the Schultis statements, appellant first argues that Rule 804(b)(3), Arizona Rules of Evidence, which allows admission of a hearsay statement made against the declarant's proprietary or pecuniary interest, is unconstitutional if ap-

plied in a criminal prosecution.[1] This argument cuts too broadly.

■ The sixth amendment right of an accused to confront witnesses against him does not require the exclusion of all statements of persons who do not appear at trial. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Factual situations which place an out-of-court statement within well recognized hearsay exceptions are highly indicative of the reliability of the hearsay testimony. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Fleishman,* 684 F.2d 1329 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *State v. Edwards,* 136 Ariz. 177, 665 P.2d 59 (1983).

In *State v. Edwards, supra,* the Arizona Supreme Court considered the admissibility of prior testimony of a witness who was unavailable at the time of trial. The court adopted a two step approach in assessing the admissibility of prior statements of a witness presently unavailable to testify. First, the witness must be shown to be unavailable. Then, the statement is admissible if it bears adequate "indicia of reliability." The fact that the evidence falls within a "firmly rooted hearsay exception" carries an inference of reliability.

It is clear that the hearsay exception which the state seeks to invoke to afford the "indicia of reliability" is Rule 804(b)(3). This rule deals with two types of statements against interest—inculpatory and exculpatory. In order for exculpatory statements to be admissible under this hearsay exception, not only must the statement be against the declarant's pecuniary or penal interest, it also must be accompanied by "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement."

The problem facing the courts in applying the inculpatory hearsay exception to confessions of co-defendants or co-conspirators, is that:

The inculpatory statement against the penal interest of the declarant ... also implicates and is sought to be admitted against the defendant.

Comment, *Federal Rules of Evidence, 804(b)(3), and Inculpatory Statements Against Penal Interest,* 66 Calif.L.Rev. 1189, 1190 (1978).

This type of declaration has been called a "collateral inculpatory statement," that is, the portion of the statement which implicates the defendant is "collateral" to the portion which implicates the declarant.[2] *See United States v. Riley,* 657 F.2d 1377 (8th Cir.1981).

The failure of the rule to address this collateral inculpatory situation was not inadvertent. As the legislative history of this rule reflects, *see* S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 7051, 7068, the House had originally amended the rule to make inadmissible a statement or confession offered against the accused, made by a co-defendant or other person implicating both himself and the accused. The joint committee deleted this amendment on the basis that "[c]odification of a constitutional principle [violation of the confrontation

---

1. The rule provides:

   **Rule 804. Hearsay Exceptions; Declarant Unavailable**

   \* \* \* \* \* \*

   **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

   \* \* \* \* \* \*

   (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

2. For example, if the statement is "Richard and I held up the liquor store," the material evidence in Richard's trial "Richard held up the liquor store" is collateral to the declaration against interest statement of "I held up the liquor store."

clause of the 6th Amendment] is unnecessary and, where the principle is under development, unwise." 1974 U.S.Code Cong. & Admin.News, *supra* at 7068.

[T]hus, while specifically addressing exculpatory statements, the draftsmen of the new rules left to the courts the task of delineating prerequisites to the admissibility of inculpatory against-interest hearsay. As Congress recognized, the central underpinning of such a safeguard must be the confrontation clause of the United States Constitution.

*United States v. Alvarez,* 584 F.2d 694, 700 (5th Cir.1978).

Thus, while we disagree with the defendant that the confrontation clause prohibits all hearsay statements, we also do not agree with the state that simply fitting the declaration into a hearsay exception satisfies the confrontation clause. Rather, as stated in *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970):

[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' (Quoting from *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

■ To assure this "satisfactory basis", we join other courts in this area by holding that the admissibility of collateral inculpatory declarations against interest requires not only that the declarant be unavailable and that the statement be against the declarant's penal interest[3] but also that proof of corroborating circumstances be present that clearly indicate the truthfulness of the statement. *See United States v. Alvarez, supra; United States v. Riley, supra; United States v. Palumbo,* 639 F.2d 123 (3d Cir.), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *United States v. Oliver,* 626 F.2d 254 (2d Cir.1980).

■ While the "indicia of trustworthiness" of the collateral inculpatory statement is similar to the "reliability"[4] of a co-conspirator statement introduced under Rule 801(d)(2)(E), Arizona Rules of Evidence, and as a threshold matter, the reliability of both types of statements may be tested by the same indicia, the basis of the admissibility of the statements differ. The rationale for considering a co-conspirator's statement as non-hearsay is premised upon the theory that statements made during or in furtherance of the conspiracy between the co-conspirators are truthful. Moreover, this rationale disappears where the conspiracy is completed. *See State v. Yslas,* 139 Ariz. 60, 676 P.2d 1118 (1984). The rationale of the statements against interest exception to the hearsay rule is based upon the premise that individuals generally do not lie when their statements would be against their best interests. As previously indicated, this rationale works well when the statement is against the declarant's interest alone, but has weakened reliability when the statement is against a third party's interest (the defendant against whom it is admitted), at least when viewed in the light of the confrontation clause. (See footnote 3.)

Under these circumstances, not only must the indicia of reliability associated with co-conspirator statements be applied, but the circumstances under which the statement is given must be tested. In oth-

---

**3.** Arguably, the declarant's knowledge of the defendant's involvement in the crime would "tend" to incriminate the declarant as showing that the declarant had an insider's knowledge of the crime and hence, his personal participation. *See United States v. Barrett,* 539 F.2d 244 (1st Cir.1976). *But see United States v. Sarmiento-Perez,* 633 F.2d 1092 (5th Cir.1980).

**4.** In *State v. Martin,* 139 Ariz. 466, 679 P.2d 489 (1984), the Arizona Supreme Court adopted a four-prong test to determine the reliability of a co-conspirator statement: "(1) Whether the declaration contained statements of past fact; (2) whether the declarant had personal knowledge of the identity and role of the participants in the crime; (3) whether it was possible that the declarant was relying upon faulty recollection; and (4) whether the circumstances under which the statements were made provided reason to believe that the declarant had misrepresented the defendant's involvement in the crime." (Quoting *Dutton v. Evans,* 400 U.S. at 88–89, 91 S.Ct. at 219–220.)

er words, was the statement given in a context which in and of itself is reliable?

It may well be one thing where the declarant is speaking to his friend explaining his and the defendant's involvement in a crime and a completely different thing where the declarant is speaking to a police officer in a custodial interrogation setting. In the former, the motives for speaking may only be a heartfelt remorse and need to unburden oneself to one's friend. In the latter, a completely different set of motives may be operating: (1) The desire to curry favor with the authorities; (2) the desire to lay the groundwork for a future deal and plea arrangement; (3) the expectation that if he did not completely cooperate by implicating others, things might "go bad" for him; (4) a desire for revenge (especially if the declarant has been told the defendant has implicated him, a not uncommon interrogation device); and (5) the desire to alleviate culpability by implicating others. These matters go not to the voluntariness and the admissibility of the confession if introduced against the declarant, but do cast doubt on the truth of these declarations. Under such circumstances the need for cross-examination remains a strong truth-seeking tool.

■ Also, not only must the motives of the out-of-court declarant be examined, but the possible veracity of the in-court witness must be tested. *United States v. Alvarez, supra.* In this case, the court is particularly concerned that the testimony concerning Schultis' confession was not recorded, either in writing or taped, but came from the officer's recollection as refreshed by her notes. We do not mean to impugn the integrity of this officer, we merely point out that a recorded version of the confession precludes the court from considering factors such as the witness' recollection, and the forgotten nuances.

All the cases that have been brought to our attention have held that a collateral inculpatory statement taken in a custodial interrogation setting is inadmissible. They have done so either on the basis that the custodial interrogation lacks sufficient corroborating circumstances of trustworthiness to overcome the confrontation clause, *see United States v. Oliver, supra,* or that such statements do not even have the traditional indicia of reliability to fall within the hearsay exception itself. *United States v. Sarmiento-Perez, supra.*

■ We are of the opinion that there may be custodial interrogations which do have sufficient indicia of trustworthiness to fall within the hearsay exception to be admissible even in face of the confrontation clause. However, considering all the circumstances surrounding the taking of Schultis' statement, we hold they are not present here and it was error to admit that statement.

The state argues, however, that even if the statement was legally inadmissible, its admission was harmless error. In making this argument, the state points to the incriminating testimony of the accomplice, Hellman, which, independent of the Schultis statement, would have been sufficient to convict and the testimony of the handwriting expert which placed the defendant's signature on some of the forged checks. We agree that the state's case against the defendant was strong without Schultis' statement, which causes us to wonder why the state took the risk of error by seeking its admission. Prosecutorial "overkill" may and often does backfire. Be that as it may, it appears that Hellman was impeached by his prior convictions and by his motive for testifying: he wanted the check charges out of the way so that he would only serve concurrent time on these charges with a violation of probation on a prior charge. Whether the jury would have accepted Hellman's story in absence of Schultis' corroboration is pure speculation. The handwriting expert testimony was convincing, but was simply that, expert testimony which the jury was at liberty to accept or disregard. In short, we are unable to say beyond a reasonable doubt that, in absence of the Schultis statement, the jury would have reached the same result. We therefore hold that under the facts of this case the admission of the

accomplice's statement implicating appellant did constitute a violation of appellant's sixth amendment right to confrontation and was not harmless error, beyond a reasonable doubt.

Since we must reverse on this issue, we do not explore in detail whether statements made during initial jury *voir dire* require reversal, other than to note that the court did not abuse its discretion in denying a motion for mistrial based upon that occurrence. Likewise, we find no error in allowing the jury to rehear the testimony concerning Schultis' statement, other than to note that this request on behalf of the jury reinforces our conclusion that the admission of the Schultis statement was not harmless error.

Since the defendant's final argument will resurface on retrial, we address this issue, that is, that the application of A.R.S. § 13–604(B) denied him equal protection and due process under the federal constitution.

A.R.S. § 13–604(A) provides that a person convicted of a class 4, 5 or 6 felony, may not be subject to enhancement of sentence based on a prior conviction more than ten years old. However, under A.R.S. § 13–604(B) a person who has been convicted of a class 2 or 3 felony may have their sentences enhanced with prior felony convictions regardless of the age of the conviction.

The determination of appropriate punishment for particular offenses is a legislative prerogative. *State v. Pike,* 133 Ariz. 178, 650 P.2d 480 (App.1982). As a general matter, recidivist statutes do not violate due process or equal protection rights. *See Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). There is no denial of equal protection if there exists a rational basis for differentiated punishment. *See State v. Mulalley,* 127 Ariz. 92, 618 P.2d 586 (1980). In our view, there is a rational basis for the difference between enhancement of punishment upon conviction of a more serious felony and enhancement for a less serious felony. An individual convicted of a class 2 or 3

felony has been charged and found guilty of a more serious offense, under legislative standards, than a person convicted of a 4, 5 or 6 class felony. We find this difference does provide a rational basis upon which the legislature can provide that such an individual may be subject to enhanced punishment based on a prior conviction more than ten years old, whereas an individual convicted of a lesser felony may not have his sentence enhanced if the prior conviction is more than ten years old.

Since we find that there is a reasonable and rational ground for the different treatment of enhancement of punishment in the situation described above, we find no violation of appellant's due process or equal protection rights.

Based on the foregoing, the defendant's conviction and sentence for conspiracy to commit a fraudulent scheme is reversed and the matter remanded for a new trial.

KLEINSCHMIDT, P.J., and GREER, J., concur.