928 P.2d 706

**STATE of Arizona, Appellee,**

v.

**Pedro NORIEGA, Jr., Appellant.**

No. 1 CA–CR 94–0474.

Court of Appeals of Arizona,
Division 1, Department D.

July 16, 1996.

Review Granted Dec. 17, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

SULT, Judge.

Pedro Noriega, Jr. ("defendant") appeals his convictions and sentences, contending that the trial court erred by refusing to give his requested jury instruction concerning mere presence. Because we conclude that the instruction should have been given, we reverse the judgments of conviction and remand for a new trial.

## PROCEDURAL HISTORY

Defendant was charged by indictment with four counts of threatening or intimidating. These offenses were charged as class four felonies because of the additional allegation that they were committed to promote, further, or assist the interests of a criminal street gang. The state also alleged that defendant had a prior felony conviction and that he committed the charged offenses while on release from confinement. After a jury convicted defendant on all counts, he admitted the prior conviction and the state dismissed the allegation that he committed the offenses while on release from confinement. Defendant was sentenced to four concurrent, aggravated terms of seven years imprisonment.

## FACTS

On the night in question, Jose Mariscal drove his girlfriend, Mireya Sierra, his cousin, Rene Valenzuela, and a friend, Oralia Ramirez, to the parking lot of a small apartment complex in Chandler. As Jose was parking his car, three vehicles pulled up and parked across the street. These vehicles included a black truck, a white truck, and a white car. Two men jumped from the black truck and jogged toward Jose's car. One of the men struck the trunk of the car with an unknown object and the other smashed the rear window with a shovel. Eventually, fifteen to twenty additional men exited the three vehicles and walked toward Jose's car.

Jose testified that "glass was shattering all over the place" and that all but two of the windows sustained damage. The occupants of the car heard the chant "East Side Chandler," "East Side," or "ESC" throughout the barrage. When Jose began backing out of the parking area to leave, several beer cans were thrown into the car, splashing beer on the victims. Jose also was hit in the neck with one of the cans.

Mireya recognized defendant as the driver of the white truck. She testified that, while defendant was not one of the two men attacking Jose's car, defendant did stand approximately four feet from the car and said, or chanted, "East Side Chandler," "East Side," or "ESC" during the attack. However, none of the other victims was able to identify defendant or confirm that he verbally participated with the crowd. Neither of the two persons attacking the vehicle had arrived at the scene in defendant's truck. Police testimony established that defendant was a member of "East Side Chandler," one of the city's oldest street gangs, and that the area of the crimes was within the "turf" claimed by the gang.

At the close of the evidence, the trial judge and counsel met in chambers to discuss closing argument and settle instructions. The prosecutor stated that he intended to argue defendant's guilt as an accomplice, rather than as a principal. Defense counsel requested that the trial court give a jury instruction concerning mere presence. Defense counsel argued that, although defendant might have been present at the scene of the incident, the jury could conclude that he did not com-

mit an act that would make him criminally liable either as a principal or an accomplice. The trial court refused to give such an instruction stating that it would amount to "a comment on the evidence."

## DISCUSSION

■ Defendant contended that mere presence was the central theory of his defense and he requested the following instruction be given by the trial court:

> Guilt cannot be established by the defendant's mere presence at a crime scene or mere association with another person at a crime scene. The fact that the defendant may have been present does not in and of itself make the defendant guilty of the crimes charged.

This was a correct statement of the law and does not constitute a comment on the evidence. *State v. Portillo*, 179 Ariz. 116, 119, 876 P.2d 1151, 1154 (1994), *vacated in part on other grounds*, 182 Ariz. 592, 898 P.2d 970 (1995). The sole issue raised by defendant in this appeal is whether the trial court erred in not giving the instruction.

■ We begin our analysis with some preliminary comments regarding jury instructions in general, followed by a more specific discussion on the subject of instructing lay jurors regarding the mere presence doctrine. The purpose of jury instructions is to inform the jury of the applicable law in understandable terms. *Barrett v. Samaritan Health Services, Inc.*, 153 Ariz. 138, 143, 735 P.2d 460, 465 (App.1987). A set of instructions need not be faultless; however, they must not mislead the jury in any way and must give the jury an understanding of the issues. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). "Jury instructions are, in essence, a guide to the proper verdict." *Lay v. City of Mesa*, 168 Ariz. 552, 555, 815 P.2d 921, 924 (App.1991).

■ To establish juror understanding of the issues, it is not enough to find that lawyers and judges comprehend an instruction. As studies have shown, that professional comprehension equates to lay comprehension is supported neither by empirical research nor by case law. *See, e.g.*, Walter W. Steele, Jr. & Elizabeth Thornburg, *Jury Instructions: A Persistent Failure to Communicate*, 67 N.C.L.Rev. 77, 99 (1988). Rather, those who craft instructions must "exert the effort to differentiate between the linguistic universe for lawyers in which the appellate opinions are couched and the linguistic universe for lay persons in which the courts' charge should be couched...." *Id.* This approach necessarily requires judges and lawyers to inquire into the frame of reference of a lay person in order to evaluate whether a set of instructions conveys with sufficient clarity all the legal concepts necessary to permit a jury to arrive at a verdict consistent with the law. *Evans v. Pickett*, 102 Ariz. 393, 397, 430 P.2d 413, 417 (1967) (The test of the propriety of an instruction "is whether the jury would be misled as to the proper rule of law.")

Using this approach, we turn to the subject of the mere presence doctrine. We have not found an Arizona case which discusses the doctrine in depth and we believe its importance and utility in criminal jury trials have been overlooked. This is particularly true in the context of accomplice liability, where the potential for juror confusion as to the requirements for imposition of liability is significant[1] and the consequences to the convicted accomplice are serious.[2] We empha-

---

1. The potential for confusion in this area is not necessarily limited to lay people. Both Professors Perkins and LaFave, leading commentators in the field of criminal law, saw fit in their discussions on accomplice liability to include similar caveats that "presence at the scene of an offense is not of itself sufficient to constitute any sort of criminal guilt" and "mere presence at the scene of the crime is not enough." Rollin M. Perkins, *Criminal Law* 573 (1957) and Wayne R. LaFave and Austin W. Scott, *Substantive Criminal Law* 138 (1986). Presumably, it was thought necessary by these commentators to instruct the principal users of these treatises, namely judges, lawyers, and law students, on this proposition.

2. A compelling reason why courts should attempt to insure that an accomplice conviction is returned only by a properly instructed jury is that in Arizona, as in most jurisdictions, a convicted accomplice is subject to the same punishment as the principal. Ariz.Rev.Stat.Ann. § 13–302 (1989); *State v. Tison*, 129 Ariz. 526, 545, 633 P.2d 335, 354 (1981). This is true notwithstand-

size, however, that our discussion is limited to the role of mere presence in the context of accomplice liability where such liability is founded on actual (as opposed to constructive) presence.[3]

The origin of the mere presence doctrine in our criminal jurisprudence is not documented with any precision but probably came into being as the law evolved in tune with changing notions of criminal responsibility. For example, at early common law one who was merely present at the commission of a felony was nevertheless guilty of a misdemeanor if he did not use means to apprehend the felon. Rollin M. Perkins, *Criminal Law* 573 (1957). We no longer impose such responsibility on an ordinary witness to a crime, *id.*, and the mere presence doctrine presumably developed to emphasize this change.[4]

Nevertheless, we believe there exists in collective lay thinking some distorted notions of criminal accountability. We believe, for example, that a question could arise in the mind of a lay person whether merely being present at the scene of a crime could create some type of criminal liability, especially in the context of a lay perception of what constitutes an accomplice. To illustrate, suppose a pair of young people are lounging on a corner when one announces he is going to throw a rock at a passing vehicle. The companion, without comment, remains with the actor until that person chooses a vehicle and throws a rock at it, damaging that vehicle and injuring its occupant. The companion may have silently approved of the actor's deed and may even have remained at the scene with a private resolve to aid the actor if needed. He may also have demonstrated what would be considered a consciousness of

guilt by immediately fleeing from the scene with the actor. Yet, under these facts, the companion is not criminally liable as an accomplice. *See* Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* 138–39 (1986) ("An undisclosed intention to render aid if needed will not suffice.... Quite clearly, mere presence at the scene of the crime is not enough, nor is mental approval of the actor's conduct.... Mere presence plus flight has often been held insufficient...."). We nevertheless perceive that a lay jury, acting on "common" knowledge and armed only with instructions on the substantive crime and accomplice liability, could well impose accomplice liability on the companion who was present at the crime. We will now discuss several factors which underlie to this concern.

In the typical accomplice case of the type considered here, the jury will be told of the acts of both the principal and the accomplice. As a result, the jury will likely observe there exists a continuum of behaviors ranging from the more serious acts of the principal to the less objectionable acts of the accomplice. In the example mentioned above, the accomplice behavior would likely be viewed by a lay person as less connected to the crime than the behavior of the principal, as well as less morally reprehensible.[5] Given this perception, a lay juror will logically conclude that accomplice liability requires something significantly less in the way of culpable behavior than that required for conviction as a principal.

While technically correct, the danger is that the inadequately instructed juror may go beyond the continuum of culpable behavior and convict on behavior which as a matter

---

ing that the most trivial of assistance is sufficient to impose accomplice liability. *See State v. Helmenstein*, 163 N.W.2d 85 (N.D.1968) (accomplice conviction proper for one who asked burglars to pick up some bananas while they committed a burglary); *Alexander v. State*, 20 Ala.App. 432, 102 So. 597 (1925) (merely preparing food for the perpetrator sufficient to support accomplice liability); *see also* Joshua Dressler, *Reassessing the Theoretical Underpinnings of Accomplice Liability*, 37 Hastings L.J. 91, 102 (1985).

3. For a discussion of constructive presence and accomplice liability *see* Perkins, *supra*, at 572

("The typical example of constructive presence is that of the 'sentinel' stationed outside to watch, while his associates enter a building for the purpose of robbery or burglary.").

4. For a collection of early American cases dealing with the mere presence doctrine in homicide cases, *see generally* Annot., 12 A.L.R. 275, 279 (1921),

5. *See* Dressler, *supra*, 37 Hastings L.J. at 118–20 (1985).

of law amounts only to mere presence. To avoid this danger, a stoplight on the continuum is necessary. This function is provided by the mere presence instruction.

Also illustrating the importance of the mere presence instruction is the language typically found in a statute describing accomplice liability. The trial court gave the following accomplice instruction, derived from Arizona Revised Statutes Annotated ("A.R.S.") section 13–301(2) (1989):

> Accomplice means: A person other than a peace officer acting in an official capacity within the scope and authority and in the line of duty who with the intent to promote or facilitate the commission of an offense number one: Aids or attempts to aid another person in ... planning or committing the offense; or number two, provides the means or opportunity to another person to commit the offense.

Terms such as "aid" or "attempt to aid" are not further defined by the statute and thus it is not unreasonable to expect a lay juror to consider these terms in their ordinary sense and transfer his daily life experiences to the courtroom to decipher the meaning of these terms in a legal setting.

In daily life, mere presence of another can be a significant aid. Any number of scenarios occur frequently, such as the presence of a parent at a child's school play or the presence of a person at a friend's speaking engagement, where the child or friend takes encouragement from this presence. Here the motivation for the presence is simply to observe; nothing but the person's presence is communicated to the "principal." To the legally informed, such presence does not rise to the level of "accomplice." It is not unlikely, however, that the lay juror will bring to the courtroom such daily life understanding of "aid" and, if not properly instructed, will apply that understanding to the law of accomplice liability.

There is one final factor worthy of note. In Arizona, proof of accomplice liability requires a showing not only that the defendant intended the behavior that is alleged to have aided, abetted, or provided means or opportunity, but also that the defendant intended that this behavior have the effect of promoting or facilitating the crime being committed. A.R.S. § 13–301 (1989); *State v. Beard,* 107 Ariz. 388, 391, 489 P.2d 25, 28 (1971). *See generally* Wayne R. LaFave & Austin W. Scott, *supra,* at 143. This intent requirement, together with a proscribed act, separates mere presence from culpable accomplice conduct. Yet the defendant's mental state will rarely be provable by direct evidence and the jury will usually have to infer it from his behaviors and other circumstances surrounding the event. Although the trial court can instruct the jury that the "aid" must be accompanied by the intent to "promote or facilitate" the crime being committed, the defendant's presence is one of the circumstances the jury will legitimately consider to determine whether defendant possessed that intent. But for the reasons discussed above, the uninformed juror could infer the requisite intent from that presence alone. Consequently, the risk of lay jurors misapplying the law is not necessarily diminished by instructing them that a specified intent is required. Rather, the inclusion of a mere presence instruction will insure that jurors do not equate "promote or facilitate" with presence alone.

■ The mere presence doctrine has an important function in our criminal jurisprudence. When the issue is accomplice liability based on actual presence, a mere presence instruction provides a necessary aid to jurors in properly interpreting the acts of the accused accomplice and divining his true intent. In sum, such an instruction serves to insure that any resulting conviction is based on a correct understanding by the jury of the underpinnings of such liability. For these reasons, we conclude that in a prosecution for accomplice liability based on actual presence, the trial judge must, if requested, give a mere presence instruction.

■ We turn now to the case at bar. The trial court did instruct the jury that it could convict defendant if he were found to be an accomplice and defined the term as set forth above. Also as noted above, the prosecutor stated that he intended to argue defendant's guilt as an accomplice, rather than a principal, and proceeded to do just that. Thus, it

is clear from the record that defendant's convictions rest on his having been found a culpable accomplice based on actual presence. Based on our holding in this case that a mere presence instruction, if requested, must be given in this context, we conclude that it was error for the trial judge to have refused it.

The next question is whether the error was harmless. An examination of the evidence shows that the scene of this offense was one of chaos and confusion. Only one of the four victims was able to identify defendant and attribute anything to him in addition to his presence which could support his convictions. Even this victim made it clear that defendant merely stood there chanting. There was no evidence, for example, that he transported the principals to the scene, and there were no additional acts or gestures by him that could reasonably be construed as evidencing an intent to promote or facilitate the crime being committed.

This case creates the very type of question that the mere presence instruction was designed to avoid. Given that three of the four witnesses could not implicate defendant, and that defendant's single overt act cannot fairly be characterized as indisputable evidence of aiding or attempting to aid with the intent to promote or facilitate, we cannot say beyond a reasonable doubt that the jury did not convict defendant under the belief that his mere presence was sufficient.

We also note that despite the state's assertion, the instructions as a whole do not alleviate the concerns expressed in this opinion. *See State v. McNair*, 141 Ariz. 475, 481, 687 P.2d 1230, 1236 (1984). To the contrary, the accomplice instruction in particular made it more, rather than less, likely that the jury convicted defendant merely on his presence at the crime scene. Consequently, we conclude that it was not harmless error to refuse the mere presence instruction. *State v. Williams*, 133 Ariz. 220, 225, 650 P.2d 1202, 1207 (1982) (setting forth test for harmless error).

## CONCLUSION

Based on the foregoing, we reverse the judgments of conviction and sentences imposed thereon and remand this matter for a new trial.

GARBARINO, P.J., and LANKFORD, J., concur.