NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STEVEN WILLIAM DYER, *Appellant.*

No. 1 CA-CR 12-0264
FILED 5-8-2014

Appeal from the Superior Court in Maricopa County
No.  CR2001-090180
The Honorable Barbara M. Jarrett, Judge (Retired)
The Honorable Patricia Ann Starr, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Coppersmith Schermer & Brockelman PLC, Phoenix
By James J. Belanger, Scott M. Bennett
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Kenton D. Jones and Chief Judge Diane M. Johnsen joined.

_____

**O R O Z C O**, Judge:

¶1            Steven William Dyer (Dyer) appeals his convictions and sentences for one count of public sexual indecency to a minor and twelve counts of sexual conduct with a minor. Dyer argues the trial court erred when it: refused to order disclosure of the victim's medical and school records; commented on Dyer's absence during jury selection; denied his right to confrontation at a pretrial hearing; and imposed what Dyer claims are excessive sentences. Dyer further argues the prosecutor engaged in misconduct during closing argument. For the reasons that follow, we affirm Dyer's convictions and sentences.

I.        Background

¶2            Dyer was a neighbor of the victim and his family. The offenses occurred between January 1999 and January 2001 when the victim was eleven to thirteen years old. The jury found Dyer guilty as charged in 2002 after a trial *in absentia*. After authorities apprehended Dyer approximately ten years later, the trial court sentenced him to a presumptive, aggregate term of 240 years' imprisonment. Dyer timely appealed. We have jurisdiction pursuant to Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2003), 13-4031 (2010) and -4033 (2010).

II.       Denial of the Motion to Compel Disclosure of the Victim's Medical and School Records

¶3            Dyer contends the trial court erred when it refused to compel the disclosure of the victim's medical, mental health, and school records. Dyer argues the records were relevant to impeach the victim and support his defense that the victim fabricated or fantasized the events between him and Dyer. We review the decision of whether to compel disclosure of records, including a victim's medical records, for abuse of discretion. *State v. Connor*, 215 Ariz. 553, 557, ¶ 6, 161 P.3d 596, 600 (App.

2007). To the extent the trial court's decision implicates constitutional issues, our review is de novo. *Id*.

A. Background

¶4        Among other information, Dyer sought the following from the victim:

> Any and all medical and mental health records, notes and generated data including physical, psychological, psychiatric, counseling, hospitalization (in-patient and out-patient), including treatments, prescribed medications and diagnosis[; and]

> Any and all school and education records, notes and generated data including behavioral, disciplinary, achievement testing, academic, attendance, counseling and mental health records of educational institutions attended by [the victim].

The only limitation on Dyer's requests was that he sought records for the previous five years.

¶5        The trial court denied this portion of Dyer's motion to compel, finding Dyer failed to make a threshold showing of materiality for either the victim's medical or school records. Regarding the medical records, the court found Dyer offered no evidence the victim suffered from any medical or mental condition that might impact his ability to observe, recall or relate events or that would otherwise affect his ability to differentiate between fact and fantasy. The court further found that even if Dyer's allegations regarding the victim's medical or mental condition were true, Dyer offered no evidence the victim suffered from a condition or illness that warranted court-ordered disclosure of his confidential medical and mental health records. The court noted it was unaware of any authority for the proposition that the conditions Dyer identified in his motion can affect a person's ability to perceive or relate events, or that a person with those conditions or disorders is any less truthful than a person without those conditions or disorders. The court further noted Dyer and the expert he retained to support his motion were speculating what information the victim's medical records might contain and how that information might be helpful. The court held that speculation did not warrant disclosure. Moreover, the court noted that speculation did not warrant an *in camera* inspection.

¶6          The court further held Dyer already had "ample material and information" to prepare his cross-examination of the victim. The court noted Dyer could use that information to obtain additional information to assist his preparation of the cross-examination of the victim and to otherwise support his defense. This included talking to numerous witnesses to obtain information and opinions regarding the victim's credibility. Finally, the court held its analysis regarding disclosure of the medical records applied equally to the victim's school records.

B.          Discussion

¶7          We find no error. First, the unlimited nature of the request provided a sufficient basis for the trial court to refuse to conduct an *in camera* inspection and deny the motion. *See Connor*, 215 Ariz. at 561-62, ¶¶24-25, 161 P.3d at 604-05. Second, we recognize the right to refuse production of a victim's medical records is not absolute. *See State v. Sarullo*, 219 Ariz. 431, 437, ¶ 20, 199 P.3d 686, 692 (App. 2008). Circumstances exist in which a trial court may order a victim to produce medical records for an *in camera* inspection and ultimately provide those records to a defendant. *Id.* Before the defendant is entitled to an *in camera* inspection, however, the defendant must first show a reasonable probability the records sought contain information the defendant is entitled to as a matter of due process. *Id.* Where a defendant fails to provide the trial court with any reason to believe a victim's medical records contain exculpatory material, the trial court does not err when it fails to order the production of those records. *See id.* at ¶ 21.

¶8          As the trial court correctly noted, the "ample materials and information" already in Dyer's possession afforded him the opportunity to fully and effectively cross-examine the victim. Regarding direct evidence of the victim's credibility, the jury heard testimony that the victim lied to his parents and other members of his family at various times and lied when he told others he had a sexual encounter with a friend from school. The jury heard testimony the victim lied to the first forensic interviewer who interviewed him, he lied to investigators about the last time he saw Dyer and regarding what occurred the first time he and witness "GS" went to Dyer's home. The jury also heard testimony the victim never identified a distinctive tattoo and numerous moles on Dyer's back despite allegedly seeing him naked numerous times. Furthermore, the jury heard testimony from former neighbors of the victim that the victim was not truthful.

¶9        Regarding evidence of the victim's medical history, the jury also heard testimony the victim had been treated and counseled for attention deficit disorder, anger, and depression.  The jury heard testimony the victim could become violent.  Further, healthcare providers prescribed Zoloft, lithium carbonate, Risperdal, Cogentin, Ritalin and Wellbutrin for the victim at various times.[1]  The jury learned the victim had run away from home more than once.  The jury also heard testimony that major illnesses associated with people who make false allegations include bipolar/manic depressive disorder, which is frequently treated with lithium, one of the victim's medications.  The jury further heard testimony that anger at an alleged perpetrator can be a factor in false allegations, at least by adolescent females.  The victim told investigators he was upset with Dyer because Dyer broke off contact with him after the victim's parents became concerned about the relationship between the victim and Dyer.

¶10        Regarding the victim's prior sexual experience, the jury heard testimony the victim began viewing at "a wide range" of pornography when he was ten years old and viewed pornography on his family's home computer.  The victim acknowledged his mother claimed he looked at pornography on a school computer.  The jury also heard testimony the victim discussed his sexual fantasies with others, including Dyer, and sometimes did so as if those fantasies were real.

¶11        Regarding the victim's school history, the jury heard testimony the victim had been to multiple schools and changed schools frequently.[2]  Regarding the victim's alcohol and drug use, the jury heard

---

[1]        Dyer offered no evidence regarding how any medical or mental condition for which the victim underwent treatment could affect a person's ability to perceive, recall and relate events, whether they could cause a person to fabricate or fantasize events that never occurred, nor how they would otherwise affect a person's credibility.  Further, Dyer offered little evidence regarding the actual purpose of the medications prescribed to the victim or how those medications might affect a person's ability to perceive, recall and relate events, whether they could cause a person to fabricate or fantasize events that never occurred, nor how they would have otherwise affected a person's credibility.

[2]        Dyer did not explore in any significant way why the victim changed schools or why he did so frequently.

testimony that despite the victim's age, he drank alcohol and binged when he did so. The jury also heard evidence the victim used marijuana and that Dyer refused to use marijuana with the victim.

¶12     The evidence cited above was more than sufficient to permit Dyer the opportunity to present information bearing on the victim's credibility and develop and support his defense that the victim fabricated the events at issue or that they were merely a fantasy. The trial court's refusal to compel disclosure of the victim's medical and school records did not prevent Dyer from developing these themes at trial and exploring how the victim's medical and/or mental condition, medications, sexual knowledge and experience, drug or alcohol use, troubles at school, or any other factor Dyer identified in his motion to compel could have affected the victim's credibility or led him to fabricate or fantasize events that never occurred.[3]

III.     The Trial Court's Comments During Jury Selection

¶13     As noted above, the court tried Dyer *in absentia*. Dyer argues the trial court erred when it made comments about Dyer's absence during *voir dire*. Because Dyer did not object to the court's comments, we review for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991) (recognizing the failure to raise an issue at trial waives all but fundamental error.). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005). Even when a defendant establishes fundamental error, however, the defendant must still show prejudice. *Id.* at ¶ 26.

---

[3]     Dyer argues our decision in *State v. Superior Court (Roper)*, 232 Ariz. 232, 836 P.2d 445 (App. 1992) is directly on point and required disclosure of the documents. The defendant in *Roper*, however, showed there was more than a reasonable probability, if not a certainty, that the records she sought contained information material to her ability to cross-examine the victim and to support her defense. *Id.* at 234-35, 237, 836 P.2d at 447-48, 450. Dyer made no such showing here.

A.      Background

**¶14**      During *voir dire*, a prospective juror questioned Dyer's absence and expressed his belief it would be in Dyer's best interest to be present for trial.   The prospective juror then asked if the panel would receive more information regarding why Dyer was absent.   The court responded:

> [N]o, you're not going to be hearing anything about that. I'm just telling you that he is aware that the matter is proceeding to trial.   He is aware that he has a right to be here, and he is not going to be here.   His interests are being represented at trial by his attorneys.   And other than saying that, and that the jurors are not going to be allowed to consider that factor in determining whether the State has proven his guilt.   I'm going to leave it at that.

When the prospective juror commented that it seemed out of character for an innocent person to not come to court, the court responded:

> [S]ometimes there are things that we just can't explain to you or tell you about, but suffice it to say that if you are a member of the jury panel, having heard the evidence, you'll be deliberating on the evidence that's before you and you won't get to consider that factor that the defendant was not present during the trial.

When another prospective juror in turn asked if Dyer was incarcerated or not, the trial court responded that Dyer was not incarcerated.   While the trial court made other comments during voir dire regarding Dyer's absence, on appeal, Dyer only takes issue with the comments identified above.

B.      Discussion

**¶15**      We find no error, fundamental or otherwise.   The trial court's statements were appropriate responses to the questions and concerns expressed by the potential jurors.  The trial court did not portray Dyer in a negative light.   It did not comment on matters not in evidence, express any opinions, display any bias or partiality, or interfere with the jury's independent evaluation of the evidence.   The trial court did not imply or suggest, as claimed by Dyer, that he was "thumbing his nose at the legal system" or that he was "some kind of roving, dangerous pedophile, who was out in the world molesting other children."

¶16            The trial court also took steps that were more than adequate to ensure the jurors ultimately selected were not affected by Dyer's absence and that his absence played no role in their deliberations. At the beginning of *voir dire*, the court informed the prospective jurors that Dyer would not be present for trial and told them, "None of you are to draw any inferences one way or the other from his absence during the trial." When a prospective juror asked the court if a defendant has a right to be present for trial under Arizona law, the court responded:

> [T]hat is a defendant's choice. A defendant is made aware when the matter is going to proceed to trial. That's his or her choice whether to be there or not. You know, the law does not require that the defendant be here, and as I said, you're not allowed to draw any inference one way or the other from that factor.

When *voir dire* continued the next day with additional prospective jurors, the court again informed the panel:

> [Dyer] will not be present during the course of the trial. He does have a right to be here. He is not going to be here. You are not to draw any inference one way or the other from his absence during the course of the trial. And I'll ask you at a later time if anyone would have any problem with that.

When a prospective juror expressed concerns about Dyer's absence, the court told the panel that regardless of whether Dyer was present for trial, he did not have to prove his innocence, had no obligation to call any witnesses or present any evidence and the State had the burden to prove its case beyond a reasonable doubt.

¶17            We also note the court struck every prospective juror who expressed any concern or doubt regarding Dyer's absence. Finally, in the final instructions, the court instructed the jury it must not consider or speculate about Dyer's absence; his absence was not evidence; and it must not consider his absence in its determination of whether the State proved its case beyond a reasonable doubt. We presume jurors follow instructions. *State v. Dunlap*, 187 Ariz. 441, 461, 930 P.2d 518, 538 (App. 1996).

IV.    Prosecutorial Misconduct

¶18            Dyer argues the prosecutor engaged in misconduct during closing and rebuttal arguments. Dyer argues the prosecutor intentionally

misrepresented the testimony of GS regarding the second time GS and the victim went to Dyer's house. He further argues the prosecutor shifted the burden of proof.

¶19  Dyer did not object to any of the alleged misconduct. A failure to object to alleged prosecutorial misconduct at the time of trial waives the issue absent fundamental error. *State v. Wood*, 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994). In our determination of whether a prosecutor's conduct amounts to fundamental error, we focus our inquiry on the probability the conduct influenced the jury and whether the conduct denied the defendant a fair trial. *Id.* In doing so, we bear in mind that "[d]uring closing arguments, counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *State v. Bible*, 175 Ariz. 549, 602, 858 P.2d 1152, 1205 (1993). Further, prosecutors have wide latitude in closing argument. "Excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury." *State v. Jones*, 197 Ariz. 290, 305, ¶37, 4 P.3d 345, 360 (2000).

A. The Testimony of GS

¶20  The prosecutor discussed the testimony of GS during her closing argument. When the prosecutor addressed GS's testimony regarding the second time GS and the victim went to Dyer's home, the prosecutor stated, "[GS] remembers performing oral sex on Mr. Dyer or having Mr. Dyer perform it on him, but *he also remembers, he thinks, seeing Mr. Dyer perform oral sex on [the victim],* which is what [the victim] said." Dyer argues the italicized portion of the statement misrepresented the testimony of GS.

¶21  The prosecutor's statement regarding what GS remembered was incorrect. GS testified he knew there was sexual contact between Dyer and the victim the second time GS and the victim went to Dyer's house. He testified he could *not* remember, however, if Dyer and the victim engaged in oral sex at that time. When asked if he had trouble remembering the types of sex that took place, GS answered he knew "there was oral sex and hand-to-genital touching," but he did not remember clearly if the types of sexual contact he, the victim and Dyer engaged in at Dyer's home occurred during the first or second visit to Dyer's home.

¶22         Even though the prosecutor's argument was incorrect, we find no error, fundamental or otherwise. Prosecutorial misconduct is not merely "legal error, negligence, mistake or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial." *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984). Further, "[p]rosecutorial misconduct does not require reversal 'unless the defendant has been denied a fair trial as a result of the actions of counsel.'" *Bible*, 175 Ariz. at 600, 858 P.2d at 1203 (quoting *State v. Dumain*, 162 Ariz. 392, 400, 783 P.2d 1184, 1192 (1989)). GS remembered that oral sex took place but he could not remember when. We cannot say it was improper or misleading for the prosecutor to argue GS's testimony supported the victim's testimony that Dyer performed oral sex on the victim the second time GS and the victim went to Dyer's home. To argue that GS testified *he thinks he remembers* seeing that conduct occur during the second visit was incorrect. However, there is nothing in the record to suggest this was anything but an error or mistake. The argument did not deny Dyer a fair trial and nothing suggests the prosecutor misled the jury. Further, the trial court instructed the jury that what the attorneys say in closing is not evidence and Dyer's counsel reminded the jury of this in his closing argument. Again, we presume jurors follow their instructions, and there is nothing in the record to suggest the jurors in this case did not do that.

B.      Shifting the Burden of Proof

¶23         Dyer argues the prosecutor shifted the burden of proof to Dyer during her rebuttal argument. In her rebuttal argument, the prosecutor went through the confrontation call between the victim and Dyer and the many incriminating statements Dyer made during that call. The prosecutor then addressed the problems with the State's case that Dyer focused on in his own closing argument. The prosecutor addressed the victim's "problems," how he viewed pornography, his various medications, his problems with anger, his anger at his family, his anger at Dyer and his alleged sexual disorders. The prosecutor also addressed GS's inability to remember a great deal of information and GS's immunity agreement with the State. The prosecutor then addressed problems with the victim's version of events, such as how he never identified the prominent tattoo on Dyer's back and how one could not see a television from a location in Dyer's bedroom as the victim had claimed. Finally, the prosecutor addressed Dyer's argument regarding how the police could have done more during their investigation. The prosecutor then argued, "There is nothing here that indicates that the defendant is innocent of these charges. I mean, there's nothing in any of this evidence that would

show that he is innocent. There's nothing that shows – you know, I mean, as – it's innocuous either way." Dyer claims these statements shifted the burden of proof.

¶24         We find no error, fundamental or otherwise. The prosecutor's statement did not shift the burden of proof. It did not draw attention to Dyer's failure to testify, did not suggest Dyer failed to introduce evidence, did not suggest he had a duty to introduce evidence and did not even hint that Dyer bore any burden of proof. The statements at issue summarized the evidence the prosecutor had just addressed and did so in an acceptable fashion. Further, the final instructions instructed the jury repeatedly that the State had the burden to prove every element of every offense beyond a reasonable doubt with its own evidence. The instructions further provided Dyer was not required to produce evidence of any kind, he was not required to prove he was innocent, and that his failure to produce evidence was not evidence of guilt. Again, we presume the jury followed its instructions.

V.        The Right to Confront Witness GS at a Pretrial Hearing

¶25         Prior to trial, the State sought to introduce certain testimony of GS pursuant to Arizona Rule of Evidence 404(c). The State argued the evidence was admissible pursuant to Rule 404(c) to show Dyer had a character trait that gave rise to an aberrant sexual propensity to commit the offenses charged. In its consideration of the motion, and over Dyer's objection, the trial court watched a videotape of a police interview with GS rather than require GS to testify at the pretrial hearing on the motion. The court ultimately held the evidence was admissible pursuant to Rule 404(c). Dyer argues the trial court's consideration of GS's videotaped interview and its failure to require GS to appear live at the pretrial hearing denied him his right to confrontation. We review evidentiary rulings that implicate the Confrontation Clause *de novo*. *State v. Elli*son, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006).

¶26         We find no error. When a trial court decides preliminary questions involving the admissibility of evidence, the evidentiary rules do not apply. Ariz. R. Evid. 104(a); *State v. Edwards*, 136 Ariz. 177, 183, 665 P.2d 59, 65 (1983). Further, the right to confrontation is a trial right. *Barber v. Page*, 390 U.S. 719, 725 (1968); *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion); *Connor*, 215 Ariz. at 562, ¶ 28, 161 P.3d at 605. "[T]he literal right to 'confront' the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (quoting *California v. Green*, 399 U.S. 149,

157 (1970)). While Dyer argues the 404(c) hearing was such a critical stage of the proceeding that the ability to confront GS at trial was not sufficient to protect his right to confrontation, "the question whether a particular proceeding is critical to the outcome of a trial is not the proper inquiry in determining whether the Confrontation Clause has been violated. The appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination." *Kentucky v. Stincer*, 482 U.S. 730, 744, n. 17 (1987).

¶27 This is not to say that we cannot foresee a situation in which a trial court must allow a defendant to confront a witness at a pretrial hearing in order to adequately afford the defendant the opportunity to conduct a full and effective cross-examination of that witness at trial. That situation, however, is not present here. Dyer interviewed GS before the pretrial hearing. The trial court placed no limitations on Dyer's cross-examination of GS at trial. Therefore, the trial court's failure to require GS to testify in person at the pretrial hearing did not interfere with Dyer's opportunity to conduct a full and effective cross-examination of GS at trial. The trial court's decision did not interfere with Dyer's rights under the Confrontation Clause.

¶28 Within his argument on this issue, Dyer also argues the trial court's limiting instruction regarding other acts evidence was not sufficient. The trial court instructed the jury that it must not consider other acts evidence to prove Dyer's character or to prove he acted in conformity with that character, but that it could consider the other acts evidence as it related to Dyer's motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. The court further instructed the jury it could consider evidence of other similar sexual offenses by Dyer only to the extent the evidence showed a propensity to commit the charged offenses, and even then it could not consider that evidence for any purpose other than Dyer's state of mind.

¶29 Relying on the comment to Rule 404(c), Dyer argues this limiting instruction was not sufficient. Dyer argues the comment to Rule 404(c) required the court to further instruct the jury that the admission of the other acts evidence did not lessen the State's burden to prove the offenses beyond a reasonable doubt, and that the jury could not convict Dyer simply because it found Dyer committed the other acts or had a character trait that predisposed him to the commit the charged offenses. *See* Ariz. R. Evid. 404, Comment to 1997 Amendment.

¶30 We find no error. First, Dyer did not object to the court's limiting instruction. "The failure to object to an instruction either before or at the time it is given waives any error, absent fundamental error." *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). More importantly, when a defendant fails to request an instruction limiting the jury's consideration of other act evidence, the trial court's failure to give a limiting instruction *sua sponte* is not fundamental error. *State v. Taylor*, 127 Ariz. 527, 530-31, 622 P.2d 474, 477-78 (1980). If Dyer wanted the court's limiting instruction to include further limitations or provide additional instructions, Dyer had to either object to their omission or submit his own requested instruction.

¶31 Second, the purpose of jury instructions is to inform the jury of the applicable law. *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996). A set of instructions need not be faultless. The instructions, however, must give the jury an understanding of the issues and must not mislead the jury. *See id.* "Where the law is adequately covered by the instructions as a whole, no reversible error has occurred." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35, 969 P.2d 1168, 1177 (1998). Here, the instructions as a whole adequately covered the applicable law. As noted above, the court instructed the jury more than once that the State bore the burden to prove every element of every offense beyond a reasonable doubt. Further, the court's limiting instruction informed the jury it could not consider the other act evidence for any purpose other than to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. In the more specific context of Rule 404(c), the court's limiting instruction further informed the jury it could consider evidence of Dyer's other sexual acts only to the extent it showed a propensity to commit the charged offenses, and even then only as evidence of Dyer's state of mind. This was sufficient to inform the jury of the limitations placed on its consideration of the other act evidence. The failure of the trial court to provide a more detailed limiting instruction in the manner suggested by the comment to Rule 404 did not constitute error.

VI. The Twenty-Year Sentences for Sexual Conduct with a Minor

¶32 The twelve counts of sexual conduct with a minor constituted, as established by statute, dangerous crimes against children. *See* A.R.S. § 13-604.01(L)(1)(e) (2000).[4] The applicable version of A.R.S. §

---

[4] While the offenses occurred between 1999 and 2001, the substance of the applicable sentencing statutes did not change during that period.

13-604.01(C) provides that a trial court shall sentence a defendant convicted of sexual conduct with a minor who is twelve, thirteen or fourteen years of age to a presumptive term of twenty years' imprisonment. The court may mitigate or aggravate the sentence by up to seven years. A.R.S. § 13-604.01(F) (2000). A.R.S. § 13-604.01(K) (2000) provides that a sentence for the commission of a dangerous crime against children must be served consecutively to any other sentence.

¶33        The trial court sentenced Dyer to the presumptive term of twenty years' imprisonment for each count of sexual conduct with a minor. The mandatory consecutive terms resulted in an aggregate term of 240 years' imprisonment. Dyer argues his presumptive twenty-year sentences for sexual conduct with a minor, both individually and in the aggregate, constitute cruel and unusual punishment. We review *de novo* whether a sentence constitutes cruel and unusual punishment. *See State v. Kasic*, 228 Ariz. 228, 231, ¶ 15, 265 P.3d 410, 413 (App. 2011).

¶34        The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment. *State v. Berger*, 212 Ariz. 473, 475, ¶ 8, 134 P.3d 378, 380 (2006). In a "noncapital" setting, this means that the sentence imposed may not be "grossly disproportionate" to the crime. *Id*. at ¶ 10. In the analysis of whether a sentence is grossly disproportionate, "a court first determines if there is a threshold showing of gross disproportionality by comparing 'the gravity of the offense and the harshness of the penalty.'" *Berger*, 212 Ariz. at 476, ¶ 12, 134 P.3d at 381 (quoting *Ewing v. California*, 538 U.S. 11, 28 (2003)). In doing so, the court "must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Id.* at ¶ 13. If the legislature has reasonable grounds to believe that a sentence advances the goals of that state's criminal justice system in "any substantial way," and the sentence "arguably furthers the State's penological goals and thus reflects 'a rational legislative judgment, entitled to deference[,]'" a sentence is not grossly disproportionate and the analysis need not continue further. *Berger*, 212 Ariz. at 477, ¶ 17, 134 P.3d at 382 (quoting *Ewing*, 538 U.S. at 28, 30). It is "exceedingly rare" that a sentence in a noncapital case will violate the prohibitions against cruel and unusual punishment. *Id*.

¶35        A twenty-year sentence for sexual conduct with a minor who is twelve, thirteen or fourteen years of age is not grossly

---

Therefore, we cite the 2000 version of the statutes regardless of when the offense actually occurred.

disproportionate to the crime. "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *Berger*, 212 Ariz. at 477, ¶ 18, 134 P.3d at 382 (quoting *Osborne v. Ohio*, 495 U.S. 103, 109 (1990)). Our legislature has a reasonable basis to believe that the lengthy sentences it has prescribed for sexual conduct with a minor advance the goals of the Arizona criminal justice system in a substantial way, and that those sentences further the State's penological goals. A twenty-year sentence for sexual conduct with a minor under the age of fifteen, is, therefore, not grossly disproportionate.

¶**36** We note that in *Berger*, our supreme court held a ten-year minimum sentence for sexual exploitation of a minor based upon the mere possession of a single image of a child engaged in exploitive exhibition or other sexual conduct is not grossly disproportionate to the crime. *Berger*, 212 Ariz. at 474, ¶ 1, 134 P.3d at 379.[5] Viewed in the context of *Berger*, a twenty-year presumptive sentence for an adult who intentionally or knowingly engages in sexual intercourse or oral sexual contact with a minor under the age of fifteen is not grossly disproportionate to the crime. *See* A.R.S. § 13-1405(A) (2000) (sexual conduct with a minor). The fact that Dyer must serve the sentences consecutively is inconsequential. "If the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Berger*, 212 Ariz. at 479, ¶ 28, 134 P.3d at 384.[6]

¶**37** This case is distinguishable from the circumstances presented in *State v. Davis*. In *Davis*, the Arizona Supreme Court held that under the specific facts and circumstances of that case, a mandatory minimum sentence of fifty-two years' imprisonment for having voluntary sex with two post-pubescent girls violated the prohibitions against cruel and unusual punishment. *State v. Davis*, 206 Ariz. 377, 379, ¶ 1, 79 P.3d 64,

---

[5] The United States Supreme Court denied certiorari in *Berger*. *Berger v. Arizona*, 549 U.S. 1252 (2007).

[6] Dyer also urges us to hold that the prohibition against cruel and unusual punishment in Article 2, Section 15 of the Arizona Constitution affords greater protections than the prohibition against cruel and unusual punishment in the Eighth Amendment of the United States Constitution. Our supreme court has already rejected this argument. *See State v. Davis*, 206 Ariz. 377, 380-381, ¶ 12, 79 P.3d 64, 67-68 (2003).

66 (2003). The supreme court also recognized, however, that "*Davis* represents an extremely rare case[.]" *Berger*, 212 Ariz. at 480, ¶ 37, 134 P.3d at 385 (internal quotations omitted). Davis was twenty years old. His level of maturity and intelligence was far below that of a normal adult. The girls involved actively sought out Davis, voluntarily went to his home and actively participated in the acts. *Id.* at 481, ¶ 41, 134 P.3d at 386. Davis's conduct was, in the words of the supreme court, "swept up" in the broad terms and "expansive reach" of the statute. *Id.* at ¶¶ 41-42, 134 P.3d at 386. Dyer, however, was not a young adult of far below average intelligence and maturity whose conduct was swept up and caught up in the broad terms and expansive reach of the law. This case is in no way analogous to *Davis*.

VII.     Conclusion

**¶38**          We affirm Dyer's convictions and sentences.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : MJT