IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WHITNEY LEE CASTLEBERRY, *Appellant.*

No. 1 CA-CR 24-0594

FILED 06-12-2026

Appeal from the Superior Court in Maricopa County
No.  CR2021-120110-001
The Honorable Sam J. Myers, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun
*Counsel for Appellee*

Maricopa County Office of the Legal Defender, Phoenix
By Michelle DeWaelsche
*Counsel for Appellant*

---

**OPINION**

Vice Chief Judge David D. Weinzweig delivered the opinion of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**W E I N Z W E I G**, Vice Chief Judge:

**¶1** Arizona law permits a person to use deadly force in defense of premises when that person reasonably believes someone else is committing a criminal trespass and deadly force is immediately necessary to prevent or terminate that trespass. In this case, the superior court instructed the jury that a person with "an absolute and unlimited right" to be in a dwelling cannot commit criminal trespass, and gave the jury civil landlord-tenant law definitions to determine whether the victim had such a right. Those instructions converted the jury's factual inquiry—whether the defendant reasonably believed the victim was trespassing—into a legal conclusion based on misplaced civil property rights. We vacate and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** We view the facts in the light most favorable to sustaining the jury's verdict. *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

**¶3** Defendant Whitney Lee Castleberry and Joe (a pseudonym) had an on-and-off relationship that began in 2009. They shared a son.

**¶4** In 2020, Castleberry signed a lease on an apartment. Although Joe's name was not on the lease, he lived there, kept his belongings there and paid rent to Castleberry. A few months after they moved in, Joe was locked out and he kicked in the front door. Castleberry called the police. Joe was arrested. Castleberry paid for the repairs.

**¶5** A second altercation turned deadly in May 2021. Joe returned to the apartment after drinking all night. Castleberry found evidence on Joe's phone that he had been unfaithful. She told him to leave. He refused and got physical, elbowing Castleberry in the head and slapping her face. He then stormed out and she locked the door behind him.

¶6          Castleberry called her sister, who arrived to find Joe outside. As the sisters tried to sleep, Joe began pounding on the door. They told him to leave and tried to arrange a ride for him. The pounding grew louder.

¶7          Castleberry felt "nervous," "scared" and "unsafe." Joe had kicked in the front door before. She grabbed her gun, went to the door and cracked it open, but Joe pushed the door into her. She stumbled backwards and fired. The bullet struck Joe. Castleberry performed CPR, but Joe died from his injuries. The State charged Castleberry with second-degree murder.

¶8          At trial, Castleberry argued her use of force was justified and requested jury instructions on five justification theories: self-defense (A.R.S. § 13-405), defense of others (A.R.S. § 13-406), defense of premises (A.R.S. § 13-407), defense of a residential structure (A.R.S. § 13-418) and domestic violence justification (A.R.S. § 13-415). The superior court instructed the jury on all five, but modified the defense-of-premises instruction by adding a sentence drawn loosely from *State v. Reaves*: "A person who has an absolute and unlimited right to be in a dwelling cannot commit a criminal trespass thereof." *See* 252 Ariz. 553, 565, ¶ 31 (App. 2022) (holding that the superior court properly instructed the jury that a "person who has an absolute and unlimited right to be in a dwelling cannot commit a burglary thereof").

¶9          Castleberry asked the superior court to instruct the jury that her use of force was presumed reasonable, and Joe was presumed to pose an imminent threat under A.R.S. § 13-419 because he had forced his way into her residence. The court denied that instruction because Castleberry's counsel appeared to concede during oral argument that Joe was at least an invitee, which triggered the exception under A.R.S. § 13-419(C)(1).

¶10          The State requested jury instructions drawn from Arizona's Residential Landlord-Tenant Act ("Landlord-Tenant Act"). The superior court agreed and instructed the jury on the Landlord-Tenant Act's definitions for landlord, owner, rent, rental agreement and tenant under A.R.S. § 33-1310, along with termination of tenancy and recovery of possession. Castleberry objected to both the modified defense-of-premises instruction and the Landlord-Tenant Act instructions.

¶11          In closing, the prosecutor argued that because of Joe's "status as a tenant," Castleberry's only recourse in an "active danger—dangerous situation is to call police, or on a proper business day, seek eviction of the tenant. She does not get to use physical force, lethal or otherwise, to get rid

of someone." The prosecutor stressed that Castleberry "became [Joe's] landlord" by accepting his rent payments, and she "had no right to resort to physical force to get him to leave." That argument, according to the prosecutor, defeated all five of Castleberry's justification theories: "No matter how many different justification statutes [the] defense tries to throw at you, they all come down to the same thing."

¶12 After a thirteen-day trial, the jury rejected all five of Castleberry's justification theories and found her guilty of second-degree murder. The superior court sentenced her to fifteen years in prison. She timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

¶13 Castleberry challenges the jury instructions on three grounds. We review de novo whether an instruction correctly states the law, but review for an abuse of discretion whether the superior court should have given a particular instruction. *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014). Jury instructions should translate the law into language real people can understand. *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996). Trial courts should not give instructions that might mislead or confuse the jury. *State v. Trinidad*, 257 Ariz. 485, 488–89, ¶ 18 (App. 2024). If a jury instruction is given in error, the State must prove beyond a reasonable doubt that the error did not contribute to the verdict. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

¶14 When presented with a defense-of-premises justification, the jury must determine whether a reasonable person in the defendant's shoes would believe another person was committing a criminal trespass, and whether deadly force was immediately necessary to prevent or terminate that trespass. A.R.S. § 13-407. Jury instructions must direct the jury to evaluate the defendant's reasonable belief—not the victim's legal status. *State v. Ewer*, 254 Ariz. 326, 330, ¶ 19 (2023).

## I. The Modified Defense-of-Premises Jury Instruction.

¶15 Castleberry asked the superior court to give the standard defense-of-premises jury instruction. The court did so, but added one sentence at the State's behest, which read: "[A] person who has an absolute and unlimited right to be in a dwelling cannot commit a criminal trespass thereof." Castleberry argues that addition (1) redirected the jury from what matters (whether she reasonably believed Joe was trespassing) to what does

4

not (Joe's legal status), (2) shifted the burden and (3) created a mandatory presumption against her defense.

¶16     We agree.  The phrase "absolute and unlimited right" appears nowhere in the defense-of-premises statute, A.R.S. § 13-407, or the standard Revised Arizona Jury Instruction, Rev. Ariz. Jury Instr. Stat. Crim. 4.07 (justification in defense of premises) (6th ed. 2022).

¶17     The State borrowed it from *Reaves*, where this court held that a person with an absolute and unlimited right to be in a dwelling cannot burgle that dwelling.  252 Ariz. at 564–65, ¶¶ 30–31.  But that defense belonged to the defendant, not the victim.  The defendant in *Reaves* invoked the defense to defeat a burglary charge, *id.*, and the opinion relied on *State v. Altamirano*, 166 Ariz. 432, 433–34 (App. 1990), to establish that a defendant cannot burglarize his own home.  Together, *Reaves* and *Altamirano* recognize an individual defendant's right to be in his own home—a shield against prosecution.

¶18     The State flipped that shield into a sword.  It requested the "absolute and unlimited right" instruction not to protect Castleberry's right to be in her apartment, but to establish that Joe had the absolute right to be there—and therefore could not have trespassed.  That inverted instruction has no support in the statute or the case law.  Justification defenses belong to defendants.  The term "person" as used in the justification statutes refers to the putative criminal defendant.  *Ewer*, 254 Ariz. at 330, ¶ 15.

¶19     The State correctly argues that *Ewer* permits trial courts to instruct on applicable law when helpful to the jury.  But the modified instruction was wrong; it was harmful, not helpful.  It usurped the jury's fact-finding role, replacing the proper inquiry (whether Castleberry reasonably believed Joe was trespassing) with an improper one (whether Joe had property rights).  A.R.S. § 13-407.  On this record, the jury could have found that Castleberry held a reasonable belief that Joe was criminally trespassing, which required that she have "lawful control" of the apartment and make a "reasonable request" that he leave.  *See* A.R.S. § 13-1502(a)(1) (defining "criminal trespass in the third degree").  Her name was on the lease—he stayed there at her pleasure.  He hit her and she asked him to leave.  He left but returned uninvited and tried to break down the door.  To be sure, the State may introduce evidence that Joe had lived in the apartment, but that is just a data point for the jury to find Castleberry did not reasonably believe that a criminal trespass was afoot.

¶20　　　　The modified jury instruction also contradicts the legislature's directive. Our supreme court recently emphasized that justification defenses in domestic violence cases apply "whether or not the victim and the perpetrator of domestic violence are residents of the same home." *State v. Brown*, 260 Ariz. 476, 487, ¶ 50 (2025) (quoting with approval 2006 Ariz. Sess. Laws ch. 199, § 4 (2d Reg. Sess.)). The modified instruction invited the jury to decide Castleberry's justification claim based on whether Joe lived there, precisely what did not matter in *Brown*. *See id.*

¶21　　　　The instruction thus failed in three ways: (1) it weaponized case law designed to protect defendants (*Reaves*, *Altamirano*), (2) it contradicted legislative policy in domestic violence cases that justification defenses do not depend on whether the parties shared a home (*Brown*) and (3) it misdirected the jury from reasonableness to legal status (contrary to *Ewer*). That misdirection was not academic—the record contained evidence that Joe assaulted Castleberry, she told him to leave, he left, but returned uninvited and pounded on the locked door. Because the instruction misled the jury, it should not have been given. *Noriega*, 187 Ariz. at 284.

## II.　　The Landlord-Tenant Act Jury Instructions.

¶22　　　　Beyond the modified defense-of-premises instruction, the superior court instructed the jury on the Landlord-Tenant Act definitions for landlord, owner, rent, rental agreement and tenant, along with instructions for terminating tenancies and recovering possession. According to the "Recovery of Possession Limited" instruction: "A landlord may not recover or take possession of the dwelling unit by action or otherwise, including forcible removal of the tenant or his possessions."

¶23　　　　The landlord-tenant instructions had no place in this criminal trial. First, the Landlord-Tenant Act governs civil tenancy disputes. It applies to "the rental of dwelling units" and cross-references only other civil chapters of Title 33, A.R.S. § 33-1304, not the criminal code. *Cf. State v. Fell*, 203 Ariz. 186, 188–89, ¶¶ 9–14 (App. 2002) (justification defenses defined in Title 13 cannot be cross applied across statutory schemes). When a statute limits its own application by cross-reference to specific subjects, we infer the legislature did not intend a broader reach. *Id.* at 189, ¶ 11.

¶24　　　　Second, the defined terms did not help the jury understand the applicable law—they led the jury astray. The "Recovery of Possession Limited" instruction told the jury that a landlord cannot forcibly remove a tenant. That is uncontroversial in a civil eviction proceeding, but it was error in a criminal trial in which the defendant raised five justification

defenses. The instruction converted a factual question into a legal disqualification. The jurors should have determined whether Castleberry reasonably believed Joe was trespassing, but the instruction redirected their attention to how landlords must evict tenants.

**¶25** And then in closing, the State emphasized that Castleberry was Joe's landlord, so she "had no right to resort to physical force to get [Joe] to leave." We may consider the challenged jury instructions in context, which includes closing arguments. *State v. Johnson*, 205 Ariz. 413, 417, ¶ 11 (App. 2003).

**¶26** Because the landlord-tenant definitions misled the jury, the superior court erred. Given those errors and Castleberry's trial objection, the State must "prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. at 567, ¶ 18.

## III.   Harmlessness.

**¶27** The State argues that because A.R.S. § 13-407(B) permits deadly force in defense-of-premises only as self-defense permits, any flaw in the defense-of-premises instruction was inconsequential because the jury rejected self-defense. But this assumes the jury rejected self-defense on the merits—finding that Castleberry had no reasonable belief that Joe was trespassing or that deadly force was not immediately necessary. Given the State's argument, the jury might have rejected self-defense because landlords have no right to use force. After all, the State did not cabin the landlord-tenant argument to defense of premises, but extended it to every justification theory: "[N]o matter how many different justification statutes [the] defense tries to throw at you, they all come down to the same thing."

**¶28** A juror who accepted that framing might have rejected self-defense not because Castleberry was unreasonable, but because a landlord has no right to use force at all—the erroneous premise seeded by the modified instruction and cultivated by the landlord-tenant instructions. The State has not shown beyond a reasonable doubt that the jury rejected self-defense on the merits rather than on the same tainted foundation.

**¶29** The State's harmlessness argument also fails under *Brown*. When jury instructions leave room for jurors to conclude the State need not defeat the justification defense, reversal is required. *Brown*, 260 Ariz. at 488, ¶ 55. That is what happened here. The instructions, read together with the State's closing, told the jury that Castleberry was legally barred from using force as a landlord—no matter what a reasonable person in her

circumstances would have believed. The State has not shown the error was harmless beyond a reasonable doubt. *Henderson*, 210 Ariz. at 567, ¶ 18.

## IV.    Section 13-419 Presumption Instruction.

**¶30**    Arizona law presumes that a defendant reasonably believes that deadly force is immediately necessary when she knows or has reason to believe someone is unlawfully or forcefully entering her residential structure, A.R.S. § 13-419(A), and the intruder poses an imminent threat, A.R.S. § 13-419(B). Neither presumption applies, however, when the person against whom force was used "has the right to be in or is a lawful resident," which includes "an owner, lessee, invitee or titleholder, and an order of protection or injunction against harassment has not been filed against that person." A.R.S. § 13-419(C)(1).

**¶31**    A defendant is entitled to a jury instruction when the record contains the "slightest evidence" to support it. *Brown*, 260 Ariz. at 481, ¶ 18. We review the denial of a requested instruction for an abuse of discretion, but whether the evidence supports the instruction is a legal question we review de novo. *State v. Wilson*, 253 Ariz. 191, 194–95, ¶ 9 (App. 2022).

**¶32**    The superior court erroneously denied the presumption instruction. *Brown* holds that an invitee who exceeds the scope of an invitation becomes a trespasser. 260 Ariz. at 483, ¶ 33 (citing *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143 (1982)). The record contains more than "slight" evidence that Joe exceeded his invitation. Castleberry testified she felt "nervous," "scared" and "unsafe." She told him to leave. He left but returned uninvited. A detective corroborated a fresh bruise on Castleberry's forehead. Joe had broken the door down before and Castleberry feared he would do it again. The banging at the locked door intensified. A jury could have found that Castleberry had reason to believe Joe was entering unlawfully or forcefully—enough to trigger both presumptions.

**¶33**    The superior court compounded this error by treating counsel's evidentiary assessment as a legal stipulation. When asked whether there was "any evidence" that Joe was not at least an invitee, Castleberry's lawyer answered "No." But that answer only reflected counsel's view of the record at that moment—not a concession or invited error that the exception in A.R.S. § 13-419(C)(1) applies as a matter of law. Whether Joe exceeded his invitation was a question for the jury.

¶34 And the superior court—not Castleberry—introduced the error. *State v. Robertson*, 249 Ariz. 256, 260, ¶ 18 (2020) (holding a party may invoke invited error only when the party asserting the error is responsible for it). Invited error does not apply here because the court raised the invitee question and drew its own legal conclusion from counsel's factual assessment.

¶35 The error was not harmless. The A.R.S. § 13-419 presumption is uniquely powerful—no other justification instruction tells the jury that a defendant reasonably believed deadly force was necessary or that the victim was presumed to pose an imminent threat. Without those presumptions, Castleberry bore the full weight of persuasion against a prosecutor who told the jury her entire justification defense was a "guise and excuse." Had the jury been properly instructed, the State would have faced a powerful presumption it never had to overcome. *Brown* holds that refusing the A.R.S. § 13-419 instruction is not harmless even when the defendant testified he did not feel threatened. *Brown*, 260 Ariz. at 487–88, ¶ 53. That principle applies with greater force here because Castleberry testified to fear, a detective corroborated a bruise on her forehead and the record shows Joe had broken the same door once before.

## CONCLUSION

¶36 We vacate Castleberry's conviction and remand for a new trial.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR